[Civ. No. 7549. First Appellate District, Division Two.—May 14, 1931.]

ANNI HARJU, Respondent, v. MARKET STREET RAIL-WAY CO. et al., Defendants; S. V. BAUMSTEIGER, Appellant.

Ford & Johnson for Appellant.

Harold Huovinen, Daniel A. Ryan and James R. Loofbourow for Respondent.

SPENCE, J.—Plaintiff brought this action to recover damages for personal injuries sustained as the result of a collision between a cable car of the defendant Market Street Railway Company on which she was riding as a passenger and an automobile truck driven by the defendant Baumsteiger. The complaint charged that the injuries were proximately caused by the negligence of all of the defendants. Upon the trial the jury disagreed as to the defendants Market Street Railway Company and I. Crisci, the employee of said company. They brought in a verdict in favor of plaintiff and against the defendant Baumsteiger in the sum of $25,000 and from a judgment entered upon this verdict, defendant Baumsteiger appeals.

The collision occurred on September 14, 1929, on Castro Street between Elizabeth and Twenty-third Streets in San

Francisco. Plaintiff was riding on the rear outer section of the cable car which was proceeding in a northerly direction up the steep Castro Street hill toward Twenty-third Street. Defendant Baumsteiger was backing his truck in a southerly direction down the east side of Castro Street from Twenty-third Street toward Elizabeth Street. After the front portion of the street-car had passed the rear portion of the truck, the left rear end of the truck collided with the right rear section of the street-car where plaintiff was riding inflicting upon her severe and permanent injuries.

■ Appellant first contends that the evidence without conflict establishes that the collision occurred solely by reason of the negligence of the defendant Market Street Railway Company. This contention is wholly without merit. There was a conflict in the testimony respecting the manner in which the street-car was operated and it may be conceded that there was some evidence from which the jury might have found that the railway company was also chargeable with negligence. On this issue the jury disagreed. By its verdict it found against appellant on the issue of appellant's negligence, and if the evidence is sufficient to support this implied finding, the judgment will not be disturbed merely because there was some evidence of negligence on the part of appellant's co-defendant. (*Blackwell* v. *American Film Co.*, 189 Cal. 689, 698 [209 Pac. 999]; *Goehring* v. *Rogers*, 67 Cal. App. 253, 259 [227 Pac. 687].)

■ The evidence amply supported the finding that appellant was negligent and that such negligence was a proximate cause (if not the sole proximate cause) of the collision. It would serve no useful purpose to set forth in detail the testimony of the numerous witnesses. Appellant himself testified that the collision occurred approximately eighty-five feet down the hill from Twenty-third Street; that he had driven west on Twenty-third Street across the Castro Street intersection and while on Twenty-third Street he had seen the street-car approaching on Castro Street near Twenty-fourth Street; that he "made a curve" and backed down the hill, but that he did not look again in the direction in which he was proceeding and did not see the street-car again at any time after he got below "the

south curb line or the south property line of Twenty-third Street.'' Several witnesses testified that appellant backed the truck straight down the east side of Castro Street and as the front portion of the street-car passed the truck appellant swung the rear end of the truck into the street-car so as to strike it at an angle of approximately forty-five degrees. Without further reference to the testimony it is apparent that the jury's implied findings were amply sustained.

■ Appellant's next contention is that the court erred in giving certain instructions requested by the defendant Market Street Railway Company. Assuming, without deciding, that such instructions were unduly favorable to the railway company and therefore erroneous, a reversal of the judgment against appellant would not be justified upon that ground (*Goehring* v. *Rogers, supra*); but appellant contends that these instructions in effect instructed a verdict against appellant. There are two complete answers to this contention in the present case. First, none of the assailed instructions amounted to an instruction for a verdict against appellant and second, all the evidence, including that offered by appellant, clearly demonstrated the negligence of appellant and we do not believe that any alleged error in the instructions on this subject could have resulted in a miscarriage of justice as to the appellant.

■ It is further contended that it was error for the Market Street Railway Company to place before the jury the fact that appellant was insured. As thus baldly stated there would seem to be some merit in the contention but the record shows that the only reference to insurance was contained in a statement made by appellant to a police officer after the accident. In substance appellant's statement was that he was backing down Castro Street from Twenty-third Street on the east side of the street to get into a position to tow another stalled truck up the hill; that he heard the warning bell of the street-car and then looked and in some manner gave the wheel a wrong turn and collided with the passing car; that the accident was his own fault and that he was fully insured. While it is true that any attempt to show that a defendant carries indemnity insurance is frowned upon and testimony offered for that purpose alone is objectionable and inadmissible, it has been

pointed out frequently that where a defendant makes a statement which may be fairly construed as an admission or acknowledgment of responsibility and as part of such statement makes reference to the fact that he carries insurance, the entire statement may be admissible. (*Dullanty* v. *Smith,* 203 Cal. 621 [265 Pac. 814]; *McPhee* v. *Lavin,* 183 Cal. 264 [191 Pac. 23]; *Potter* v. *Driver,* 97 Cal. App. 311 [275 Pac. 526]; *Symons* v. *Wooden,* 97 Cal. App. 39 [274 Pac. 987].) In our opinion there was no error in admitting the entire statement in the present case as an admission and acknowledgment of responsibility on the part of appellant.

One further point is urged. Appellant contends that the damages are excessive. A review of the evidence convinces us that this claim is likewise without merit. Respondent was thirty-four years of age and had been an actress in Finland for about nine years before coming to this country. She had been here for twenty-two months and was in the employ of the Finnish Association teaching for the stage. She taught dancing, dramatics and singing. At the time of the accident she was receiving $175 per month. Her injuries were serious. In addition to fractures of the left arm and shoulder, her most serious injury was a general crushing of the right leg. Both the tibia and fibula were badly shattered, the former being broken into at least ten fragments and the latter into six fragments. There was a gap of some two and one-half to three inches in each of these bones in which there was no one fragment of sufficient length to bridge the gap. The artery between these bones was severed. The attending physician found the fragments so dirty and the chances of infection so great that amputation was considered. However, the fragments of the tibia were removed, cleaned and replaced in their approximate positions. In order to avoid overlapping due to muscle pull, skewers were inserted in holes drilled in the bone and traction was applied. These skewers remained in the bone for eight weeks and were then removed. To keep the fragments from bowing, the toe was pointed downward and leg placed in a cast. At the time of the trial, five months after the accident, the fragments were beginning to unite. Certain of the replaced fragments were dead

and the physician could not state whether or not these fragments had become infected. He testified that if they were not infected they could remain, but would simply form a splint in the gap. The bones below the fracture, including those of the foot, were atrophied and showed a marked deficiency of lime salts. This condition would affect the weight-bearing quality of the bone, but the testimony showed that the physician believed that these lime salts would be restored in time. Although he testified that in his opinion there would be a solid union of the fragments within a few months, he further testified that there would be a marked deformity, as the heel would be two and one-half to three inches off the ground; another operation would be necessary to correct this, but this further operation would not be attempted for about a year and not before the healing of the fragments had become certain. It further appeared that respondent would never regain the use of that leg to the extent of permitting her to do stage dancing and that she would be lame and would walk with a limp. Up to the time of the trial she had incurred doctors' bills in the sum of $1500 and hospital bills in the sum of $1080. She was still in the hospital and her bill there was continuing at the rate of $5.50 per day. From the foregoing brief outline of some of the testimony relating to damage, it is apparent that in addition to the substantial amount of special damages which respondent had sustained and would sustain in the future, she suffered injuries which were both serious and permanent in their nature. These injuries would no doubt seriously impair her earning capacity. The rule which governs this court in considering a verdict which is alleged to be excessive has often been set forth and is well stated in the case of *Lahti* v. *McMenamin*, 204 Cal. 415 [268 Pac. 644]. In the present case it cannot be said that the verdict is ''so plainly and outrageously excessive as to suggest at first blush passion or prejudice or corruption on the part of the jury'', and therefore the judgment should not be set aside by this court on that ground.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 13, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 13, 1931.