[Civ. No. 5847. Third Appellate District.—May 31, 1938.]

L. A. SISCHO, Respondent, v. CITY OF LOS BANOS (a Municipal Corporation), Appellant.

Chester O. Hansen, Gregory P. Maushart, Stephen P. Galvin and Cooley, Crowley & Supple for Appellant.

C. Ray Robinson, R. R. Sischo, Willard B. Treadwell and James D. Garibaldi for Respondent.

PLUMMER, J.—In this action the plaintiff obtained a judgment against the City of Los Banos, and from this judgment the City of Los Banos appeals. The action was prosecuted not only against the City of Los Banos, but against F. H. Cromwell, Joe Morbes, and against J. H. Burke, as the superintendent of streets of the City of Los Banos. The verdict of the jury exonerated F. H. Cromwell, Joe Morbes and J. H. Burke.

The complaint alleges that at all times mentioned therein, the defendant, J. H. Burke, was the superintendent of streets of the City of Los Banos; that by virtue of being such officer, the streets of the City of Los Banos, and particularly the street and sidewalk involved in this action, were under his care, supervision and control. It is then alleged that the defendant Joe Morbes was at all times the owner of a certain building situate in the City of Los Banos, state of California, commonly known as ''F. H. Cromwell's Store'' (the word ''Cromwell'' appears also to be spelled ''Cronwell''). That said building was, at all times mentioned in the complaint, leased and occupied by F. H. Cromwell.

Paragraph VI of the complaint alleges that the City of Los Banos, and the defendant J. H. Burke, have maintained a certain public sidewalk in front of said F. H. Cromwell's store in the City of Los Banos, and that said defendants, during all of said time, invited the general public to use said sidewalk, and represented to the general public that it was a fit, proper and safe place to walk; that said sidewalk was maintained in a negligent and careless manner; that it was unsafe for persons to travel over and upon the same; and that at all times herein mentioned, and particularly on the 8th day of January, 1936, the defendants and each of them knew of the unsafe condition of said sidewalk, and maintained the same and permitted the general public to use said sidewalk without warning to the plaintiff or to the general public of the unsafe condition of said sidewalk.

Paragraph VII of the complaint alleges that at the time mentioned, to wit, the 8th day of January, 1936, the defendants Morbes and Cromwell maintained a certain entrance and exit to said Cromwell's store in such a negligent and careless

manner that it was unsafe for persons to travel over and upon the same; and that the defendants, and each of them, knew of the unsafe condition of said entrance and exit, and maintained and used said premises in such condition without warning to customers, etc.

Paragraph IX of the complaint alleges that by reason of the negligent manner of maintaining said entrance and exit from said building, and the careless and defective manner of the defendants, City of Los Banos, and defendant J. H. Burke, in maintaining and permitting said sidewalk to remain in such dangerous and defective condition, plaintiff fell and was seriously injured, etc. The degree of the injuries are not involved in this action. The verdict of the jury was against the City of Los Banos and in favor of the other defendants named in the complaint.

The record shows that for a considerable time the City of Los Banos had maintained a cement sidewalk alongside, and in front of the store known as "Cromwell's Store". From the sidewalk line leading into the store, the defendants Morbes and Cromwell had maintained an entrance or exit laid with tiling. The exact slope of this tiling does not appear to be specifically stated in the record. From the junction of the sidewalk with the tiling the sidewalk sloped seven-eighths of an inch in the first foot, and averaged fifty-eight hundredths per foot for three feet adjacent to the property line. It appears that the ordinary slope of a sidewalk is one-quarter inch to the foot. The testimony in the record is conclusive to the effect that one would not notice the rise or slope of the sidewalk, or that there was any grade there in walking over the same; that in order to detect the same one would have to be looking at the sidewalk with some degree of keenness of observation.

The sidewalk in front of the store was finished with a metal trowel, pursuant to an ordinance of the City of Los Banos. It appears that there are two methods of finishing sidewalks: one with a metal trowel, which leaves the sidewalk rather smooth; the other with a wooden trowel, which leaves a rougher surface.

The defendant Burke testified that he had been the superintendent of streets for eight and one-half years; that he knew of the entrance to the Cromwell store; that he had gone along the sidewalk looking for trouble; that the sidewalk there had

not impressed him as being in a dangerous condition; that he had never heard anyone speak of the strip of sidewalk in question; no one had ever mentioned to him that there was a slope in the sidewalk in front of the Cromwell store; that he had never heard of anyone slipping on the sidewalk. The Sidewalk Ordinance of the City of Los Banos calls for a topping to be troweled with a steel trowel; that if the sidewalk in front of Cromwell's store was a hazard, there were ten thousand hazards to the block in most any city that he had been in. All the testimony in the record is to the effect that there was nothing in the construction of the sidewalk that rendered it inherently or structurally dangerous to its use by pedestrians; that pedestrians would use the sidewalk over and over without noticing any variation in the level thereof, unless special attention was paid or attracted thereto.

While the slope, grade and construction of the sidewalk is given particular attention in the testimony, and the burden of the argument of counsel relates thereto, the testimony in the transcript shows beyond controversy that the cause of the injury suffered by the plaintiff did not arise from, or depend upon the alleged unsafe condition of the sidewalk. It may be here stated that a slight rain was falling on the date of the accident, and that the tiling, from the sidewalk line to the store entrance, was wet. The testimony of the plaintiff shows conclusively that the cause of the injury arose from the plaintiff slipping upon the tiling, and not upon the sidewalk. As to how his injuries were sustained, and the cause thereof, is shown by the plaintiff's own testimony, which we herewith set forth:

"Q. Now, when you were being carried back into the store, did you have an opportunity to observe whether you left any mark on that tile and walk? A. I looked to see what particularly caused my fall; in packing me back I looked right here where I slipped and the mark of my foot was right on the tile, slid over in that manner and the right foot there was a streak that went off here for a foot or so (indicating). Q. On the tile or on the pavement? A. On the pavement. Q. Now, Mr. Sischo, with reference to the marks nearest to you as you were going in and what would have been the left mark coming out, and with reference to the tile and the sidewalk? A. It was, the mark from here, right here on this tiling as my foot had gone just flat that way,

slid right over it. Q. Now, how far did that mark extend on to the tiling? A. Well, the biggest part of it was on the tiling. Q. How much was on the tiling? A. I would say practically all of it, just a slight blur, just as I have it, just about as it happened. Q. Which way did the two or three inches run, did that run north and south or east and west? A. It would be wider this way, and shorter this way. Q. That is the wide mark. We will call north and south and the narrow part was east and west. A. No—yes, that is correct. You see the street runs in a northeasterly direction and southeasterly direction. Q. So then the most of that mark, that is, the four or five inch part, was on the tiling? A. Yes. Q. How wide was the other mark? A. Well, it was a mark about like your finger, maybe not that wide, just a straight streak. Q. And how long? A. Oh, I should say just eight or ten inches.''

Referring to his slipping on the tile with his left foot, plaintiff testified:

''Q. Your testimony is it was made by the ball of your foot? A. The ball of my foot, as I was up on the ball of my left foot it shot out from under me. Q. You could tell that by looking at the marks? A. Not only the mark, I know that is the foot that shot out from under me.''

 The verdict of the jury exonerating all of the parties save the City of Los Banos, and finding of verdict against the city, irrespective of the testimony which we have just set forth, is readily understood when we turn to the transcript and find that the following testimony was introduced over the objection of counsel for the city. We here set forth the question and answer, which fully explains the basis for the jury's action:

''Q. Now, Mr. Sischo, now what was the substance of the conversation that you had with Joe Toscano, the mayor of the city, immediately after, or shortly after the accident, that took place in the hospital at the time and manner indicated by you? A. Well, the start of that conversation of course was about myself, how I was getting along, and how I felt, and how I was resting, and that he expressed his sympathy, the fact that I was so seriously injured, but the conversation led to the point where he said that the City of Los Banos in this matter was very lucky, due to his forethought in the

matter; he said: 'We have taken out insurance, we only took out insurance only ten days before you had fallen.' "

That the admission of this testimony was prejudicially erroneous is shown by the case of *Squires* v. *Riffe,* 211 Cal. 370 [295 Pac. 517]. The opinion of Toscano had no relevancy whatever to the issues involved. The cause presented simply the condition of the sidewalk, and whether the plaintiff had actually slipped thereon, or elsewhere, as his testimony demonstrated. The statement as to the insurance was not involved in anything connected with the accident, nor did it have anything to do with making plain, or otherwise, any condition of the sidewalk in question.

As stated in the case of *Squires* v. *Riffe, supra,* it must be presumed that counsel for the plaintiff knew the answer which his client would give, and that it would serve no purpose except to show that the city carried insurance.

We may here state that our attention has not been called to a scintilla of evidence, nor have we discovered any, which indicates that the plaintiff in this action slipped other than upon the tiling in front of Cromwell's store. The mere fact that he landed upon the sidewalk alongside of the store does not render the city liable, nor alter in the least the proximate cause of the plaintiff's injuries.

In addition to what we have said a number of photographs were introduced in evidence of the sidewalk in front of the entrance to Cromwell's store. It may be stated that an inspection of these photographs reveals that whatever variation there may be in the slope of the sidewalk, the same is not perceptible from the photographs, and while the hazardous condition of a sidewalk may be said to be a question of fact, yet when the change of the grade is so negligible that it is not ordinarily perceptible to casual observation, we think it becomes a question of law as to whether the city is or is not maintaining a public hazard. The law seems to be well settled that cities are not insurers, but that they are only required to use reasonable care and see that public sidewalks are suitable for use by pedestrians.

A number of cases have been called to our attention where damages have been allowed, where sidewalks in and of themselves are structurally dangerous, and the hazard has been added thereto by reason of rain, snow or ice. A review thereof would serve no useful purpose, and we content our-

selves with the statement that even if the injury to the plaintiff had occurred by slipping upon the sidewalk, no case has been called to our attention where the variation is so negligible as in the instant case. Again, had the plaintiff slipped upon the sidewalk instead of upon the tiling leading thereto, liability of the city would not have been fixed.

This action against the city is based upon section 2 of the Public Liability Act, approved June 13, 1923, Stats. 1923, page 675, Act Number 5619, Deering's General Laws. That section, however, requires that the person having charge of the street or highway must have had either actual or constructive notice of the dangerous or defective condition of the public street. (*Nicholson* v. *City of Los Angeles*, 5 Cal. (2d) 361 [54 Pac. (2d) 725]; *Whiting* v. *City of National City*, 9 Cal. (2d) 163 [69 Pac. (2d) 990].) There is no testimony in the record showing actual notice to the superintendent of streets, whose duty the complaint alleges it was to look after and maintain and repair the sidewalks of the City of Los Banos; nor is there anything in the record from which constructive notice might be inferred. This is apparent from the testimony, which shows that the slight variation in the elevation of the sidewalk was such that the ordinary pedestrian would walk over the same without noticing any difference in the level thereof, and that the variation thereof was so unnoticeable as not to be perceptible to the casual observer. However, as we have shown by excerpts from the plaintiff's testimony that the plaintiff slipped upon the moist or wet tile and that the alleged defective condition of the sidewalk in front of the Cromwell store was not the proximate cause of the plaintiff's injuries, and in fact had nothing to do with the plaintiff's injuries, it must be held that no cause of action is shown to exist as against the City of Los Banos.

The judgment is reversed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 30, 1938, and the following opinion then rendered thereon:

THE COURT.—Counsel for respondent is in error in assuming that the court was either deceived or misled by any

error in the printing of the testimony contained in the appellant's brief.

This cause was before us upon a motion to dismiss or affirm. At that time the testimony of the plaintiff was carefully read, and the conclusion reached that the motion should be denied. Upon the submission of this cause the testimony of the plaintiff was again read, and after the reading thereof was compared with that portion of the plaintiff's testimony set out in the appellant's brief, and which was copied by this court in its opinion. We did not notice that the words "Was that mark on the tile and on the sidewalk?" had been omitted in the printing of the testimony in appellant's brief. However, a reading of the testimony set out in the opinion of this court indicates that that omission was absolutely and wholly immaterial; it did not in any way tend to change the legal effect of the testimony or vary in the least the proximate cause of plaintiff's injury.

In the opinion of this court we find that we did set forth the following: "A. I looked to see what particularly caused my fall; in packing me back I looked right here where I slipped, and the mark of my foot was right on the tile, slid over in that manner, and the right foot there was a streak that went off here for a foot or so (indicating). Q. On the tile or on the pavement? A. On the pavement."

We do not deem it necessary to again set forth the testimony of the plaintiff showing beyond any question that when he placed his left foot upon the wet and slippery tiling, it shot from under him; that his right foot made a streak on the sidewalk, and that the left foot slipped over a portion of the pavement; thus showing absolutely that the proximate cause of the plaintiff's injury was the slipping upon the wet tile.

It is common knowledge that tiling, when wet, is slippery, and in this cause the testimony shows that the tiling was wet, and therefore slippery.

With the omitted words supplied, which have no significance in themselves, the testimony which we have set out in the opinion filed in this cause is not only accurate, but establishes the conclusion irresistibly, which we have reached, that no cause of action has been shown to exist as against the City of Los Banos.

We may add that even though the sidewalk constructed by the City of Los Banos was perfectly flat, the streaks made thereon after the defendant had slipped on the tile would have been practically the same. The negligible slope of the sidewalk is shown by the testimony not to have precipitated the plaintiff's fall. That the plaintiff's body alighted upon the sidewalk is wholly immaterial. The city under such circumstances would no more be rendered liable than would be the case if one were jolted from a street car and alighted upon the concrete portion of a paved street. The jolting from the street car would not injure the person's body; the striking on the paved street would occasion the injury, but the proximate cause would be the jolting of the person from the street car. That is just the case presented by the record here. The proximate cause was the slipping upon the wet and slippery tile.

The verdict of the jury did not conform to the facts of the case showing the proximate cause, and an order of reversal was necessary. This being decisive of the case, other questions presented upon the petition for rehearing need not be considered.

The petition for rehearing is denied.