[Civ. No. 13047. First Dist., Div. One. Nov. 27, 1946.]

WENDOLYN C. FREEMAN et al., Respondents, v. WM. E. NICKERSON et al., Appellants.

Charles V. Barfield and Franklin A. Plank for Appellants.

Nichols & Richard and Stanley C. Smallwood for Respondents.

SCHOTTKY, J. pro tem.—Respondent-wife suffered burns upon her hands, face and neck as the result of an explosion that followed her deposit of highly combustible and explosive sawdust, accumulated during a sanding operation performed after a hardwood floor was installed, into a garbage incinerator chute situated on the first floor of appellants' apartment house. Respondents commenced an action against appellants to recover for the personal injuries sustained by the wife while engaged in performing contract services in appellants' apartment house and for medical expenses incurred by respondent-husband. The jury rendered a verdict in favor of respondents for $12,500. Appellants' motion for a new trial was denied. This appeal is from the judgment entered upon the verdict.

Appellants urge the following as grounds for the reversal of the judgment: (1) Insufficiency of the evidence on appellants' negligence; (2) That respondents were guilty of contributory negligence as matter of law; (3) Prejudicial misconduct of respondent-husband and his counsel in bringing to the jury's attention the fact that defendants were insured; (4) Grossly excessive damages; (5) Error in giving and refusing instructions.

Before proceeding to discuss these contentions of appellants, we shall give a brief summary of the evidence.

Appellants, husband and wife, owned a three story, 27-unit apartment house at 624 Brooklyn Avenue, Oakland—all apartments therein being occupied on the date of the incident herein involved (August 21, 1944). Respondent-husband was an independent contractor engaged in the business of installing hardwood floors, and he was engaged by defendant-wife to install some hardwood flooring in one of the apartments. (There is no dispute concerning the authority of the wife to make such contract—she being the active manager of the premises while her husband had outside employment.)

Respondent-wife was in the habit of working with her husband on his jobs, and she was assisting him in doing the work required under his agreement with appellants. The job was commenced on Tuesday, August 15, 1944, six days before the date of the injury to respondent-wife. Neither of the respondents worked there on that first day (Tuesday), but they had another contractor, S. M. Pierce, doing the original floor laying on that day. The wife, however, worked on Wed-

nesday (August 16)—helping to "lay the floors" and "set nails."

As part of the floor-laying process, respondents used a mechanical device known as a "sander" or "sanding machine." This device resembles, in appearance and operation, a vacuum cleaner—with sawdust of a fine, "floury" consistency being sucked up into a bag attachment.

There is expert testimony (of respondents' witness, John Finn) that although this "oak dust" or sawdust is not spontaneously combustible until it is subject to heat of 600 degrees, if it is poured upon an open flame it will ignite and explode, and the "flame will follow up the path you are dropping the dust down."

It is uncontradicted that both respondent-wife and respondent-husband were fully aware of the dangerously explosive and incendiary nature of the product of their "sanding" operations, if poured on an open flame.

Appellants' apartment house was equipped with a brick garbage incinerator (apparently on the basement floor) which was about three feet square and about five feet high. The garbage chute or chimney thereto ran up through the three floors of the building, with an opening on each floor set off from the common hallways and situated in a closet (on each floor) about four feet square and nine feet high. The chute opening on each floor was fitted with a scoop or hopper which fitted into the chute opening, and into which the garbage was deposited. When that hopper was placed in its closed position, the garbage would then drop from the base of the receptacle down into the incinerator. The incinerator and chute were in good condition at the time of the accident. Appellants' expert, H. E. R. Dannett, testified that the bottom or "shield" of the hopper—which closed the chute opening and kept the garbage deposited from passing down into the incinerator until the hopper was put into its "closed" position —was a "safety measure to prevent any smoke or flame coming through . . . that opening when the door is open."

Respondent-wife was aware that the "chute" into which she deposited the "oak dust" was an "incinerator chute" rather than a "wet garbage" chute. She also knew that tenants would be dropping garbage down the chute "all of the time," but did not think the tenants would be dropping "lighted cigarettes" into the chute.

Respondent-wife testified that the sanding machine was "set up" on Wednesday afternoon (August 16) just before the conclusion of their day's work, but that the real sanding operations were not started until Thursday. Mr. Pierce operated the sander. The oak dust which accumulated that morning was emptied by Pierce from the bag into two or three pasteboard boxes. "Around noon" on that day respondent-wife heard appellant-wife ask Mr. Freeman "what he was going to do with the dust." He told her to have the garbage man carry it away; to which Mrs. Nickerson replied that "she didn't much like to do that" and asked if she "couldn't empty it into the incinerator down the hall." According to Mrs. Freeman, her husband said, "Well, you can't put it there if there is a fire in the incinerator because it is dangerously explosive if emptied on an open fire"; after which appellant-wife said, "Well, it will be perfectly all right to empty it there because there is no fire in the incinerator except on Friday." Respondent-wife also testified that appellant then showed Mr. Freeman where the incinerator chute was located on the first floor (where the work was being done), and right after that both respondents carried the three boxes containing the oak dust to the chute and the husband dumped the dust into the incinerator.

Respondent-husband testified to that identical conversation had between himself and appellant, and fixed Pierce and respondent-wife as being present at the conversation. He was very positive in his testimony that he told Mrs. Nickerson of the danger of throwing the dust on an open flame, and in her reply thereto that a fire was "built" in the incinerator "only on Fridays." Pierce, respondent-husband's associate, also testified that he heard the identical statements testified to as above noted by both respondents. He also knew that the oak dust would explode if scattered over an open flame. He testified that Freeman dumped "two or three boxes" into the chute on "Thursday morning," and he himself dumped some out of the "bag" in the afternoon and nothing happened.

Appellant-wife denied that the conversation above discussed took place between herself and Mr. Freeman. She said that Mr. Freeman met her in the hallway and asked her "Where is the incinerator so I can dispose of my refuse," and that she replied, "Here is the incinerator, but be careful, don't clog it up, we don't want any smoke." She testified that that

conversation took place during the "forenoon" on Thursday. She also testified that she was not aware of the inflammable and explosive nature of the oak dust, that Mr. Freeman did not so advise her of such, and that she did not say that a fire was built in the incinerator only on Fridays. Her testimony is that it was their "practice to light it every morning." Mrs. Nickerson was corroborated on the daily lighting of the fire by her husband, tenants Mr. Weir and Mrs. Prendergast, janitor William Felt and his son Douglas Felt, who assisted his father and substituted for him in periods of his absence. Douglas Felt also testified that he lit the incinerator fire at "about 8:00 o'clock" on the "day that that explosion happened." He said he then left the building and did not return until after the accident. His father was in Ogden, Utah, on the day of the explosion.

There is testimony that an accumulation of refuse in the incinerator for a week (i. e., Friday to Friday) would bring it up to the first floor hopper or the second floor level.

Respondent-wife also testified that no dust was dumped on Friday (August 18), and that they did not work on Saturday or Sunday. They returned to work on Monday, and her husband dumped some oak dust on Monday morning "about 9:30 or 10:00" o'clock. She emptied a bag of dust "about one-third full" "around 2:00 o'clock" Monday afternoon, and "had no difficulty when she poured the dust into the incinerator chute. She saw no flame in the incinerator and the hopper handle did not feel warm. Nobody told her that there was or would be a fire in the incinerator on Monday, August 21. She went back later on that afternoon to dump a "double handful" out of the bag, and at that time the explosion occurred, which resulted in the burning of her face, neck and hands. She said that in doing the dumping, she removed the "top" of the incinerator. A comparison of that statement with her prior testimony would seem to disclose that by "top" she meant the "hopper" or "scoop" which was inserted into the chute opening, and into which the garbage deposits were made. She placed the bag "slightly" into the incinerator so she would not "track" the dust over the closet—this, as she testified, for the reason that appellant-wife had instructed Mr. Freeman "about the dust getting—tracking all over everything."

Respondent-wife further testified that she was (after the explosion) carried into Mrs. Nickerson's room and placed on

a bed. She heard appellant-wife tell Mr. Freeman "how sorry she was, she had had the janitor build a fire and she had forgotten to tell him" and that "she kind of felt like it was her fault." Respondent-husband testified that immediately after the explosion Mrs. Nickerson "volunteered and told me that she was sorry" and that she "just had the janitor build a fire," and that she had "meant to tell" him "about it and overlooked it or forgot it."

Mrs. Nickerson denied ever having made such statement. Two other tenants, Mrs. Kinst and Mrs. Prendergast, testified that they were in the same room with both respondents and Mrs. Nickerson, and that they did not hear any such statement made by appellant-wife.

Respondent husband testified that the day after the accident he asked Mrs. Nickerson if he could have the money remaining due under the contract, as he "had some extra debts on hand," and that she told him "not to worry about that, that she was insured, and she would take care of that," and she paid him the balance of the contract price before he finished the job. Mrs. Nickerson testified that on Tuesday morning (after the accident) Mr. Freeman told her that he did not feel that the injury to his wife was attributable to any fault on the part of appellant-wife.

Appellants' first contention is that there is no substantial evidence to establish any actionable negligence on the part of defendants.

Both respondents were, of course, business visitors or invitees on the premises of appellants, and, as the owners of the property, appellants owed respondents the duty to afford them reasonably safe premises and conditions upon which to carry out the purpose of the "invitation." (*Dobbie* v. *Pacific Gas & Electric Co.*, 95 Cal.App. 781 [273 P. 630]; *Sawyer* v. *Hooper*, 79 Cal.App. 395 [249 P. 530]; *Hinds* v. *Wheadon*, 19 Cal.2d 458 [121 P.2d 724].) In the fulfillment of such responsibility, it is the duty of the owner to advise the invitee of hidden dangers known to such owner, in instances where such dangers are not reasonably apparent to the invitee. (*Riley* v. *Berkeley Motors, Inc.*, 1 Cal.App.2d 217 [36 P.2d 398]; *Lejeune* v. *General Petroleum Corp.*, 128 Cal.App. 404 [18 P.2d 429].)

It is a rule too well established to require the citation of authorities that before an appellate tribunal is justified

in reversing a judgment upon the ground of the insufficiency of the evidence, it must appear from the record that, accepting the full force of the evidence adduced, together with every inference favorable to the prevailing party which may reasonably be drawn therefrom, it still appears that the law precludes the prevailing party from recovering a judgment. The evidence must be construed most strongly against the losing party. Every favorable inference and presumption that may fairly be deduced from the evidence should be resolved in favor of the prevailing party. The prevailing party's evidence must ordinarily be accepted as true, and contradictory evidence must be disregarded.

This familiar rule is too often disregarded by counsel who insist upon arguing conflicting evidence before an appellate tribunal. In the instant case there is evidence, as shown by the summary hereinbefore set forth, that appellants wished to have respondents empty the dust "into the incinerator down the hall" and were told by respondent-husband that it could not be put there if there was a fire in the incinerator because it was dangerously explosive, after which appellant-wife told respondent that it would be "perfectly all right to empty it there because there is no fire in the incinerator except on Friday." The accident occurred on Monday afternoon, and there is in the record the statement of appellant-wife, made after the accident, to the effect that she had had the janitor build a fire that morning and had forgotten to tell respondents. It appears, therefore, that there was evidence showing that appellants knew that the oak dust was explosive when exposed to fire, and that they assured respondents that there would be no fire in the incinerator on any day except Friday, and that they caused a fire to be started in the, incinerator on Monday and did not inform respondents that they had done so. It is true that there was evidence contradicting the foregoing statements, and it was quite proper for appellants to argue the weight of this before the jury and before the trial court on their motion for a new trial, but in view of the record in the instant case and the rule as to the function of an appellate tribunal, appellants' contention that there is no substantial evidence to establish negligence on the part of appellants is entirely without merit.

Appellants' second contention is that respondents were guilty of contributory negligence as a matter of law. They argue, first, that it was contributory negligence *per se* for

Mrs. Freeman to have removed the "hopper" or "scoop" before dumping the contents of the "sander" bag into the chute, and second, that the removal of the hopper violated section 6406 of the Labor Code (prohibiting the removal, displacement, etc., of safety devices furnished for use in any employment or place of employment), and that this was negligence *per se* which proximately contributed to respondent-wife's injuries.

 As was said by our Supreme Court in *Flores* v. *Fitzgerald,* 204 Cal. 374, at page 376 [268 P. 369] : " 'Contributory negligence is a question of law only when the court is impelled to say that from the facts reasonable men can draw but one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury.' (*Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335, 336 [208 P. 125, 128] ; *Smith* v. *Southern Pacific Co.,* 201 Cal. 57 [255 P. 500].) In all other cases the question of contributory negligence is a question of fact for the jury (*Walgren* v. *Market St. Ry. Co.,* 132 Cal. 656, 663 [62 P. 308, 64 P. 993] ; *Jansson* v. *National Steamship Co.,* 187 Cal. 192 [208 P. 90] ; *Smith* v. *Southern Pacific Co., supra*)." And again at page 378 : "Although the violation of the ordinance may have been negligence *per se,* yet, as it was not shown that such negligence was the direct or proximate cause of his injury, it will not defeat his right of recovery for damages sustained by reason of said injury (*Lawrence* v. *Southern Pacific Co.,* 189 Cal. 434, 442 [208 P. 966])."

In *Burtt* v. *Bank of California Nat. Assn.,* 211 Cal. 548, the court said at page 551 [296 P. 68] : "The principle that a violation of a statute or ordinance is negligence *per se* is subject to the limitation that the act or omission must proximately cause or contribute to the injury in order to bar a recovery. (*Skaggs* v. *Wiley,* 108 Cal.App. 429 [292 P. 132] ; *Dewhirst* v. *Leopold,* 194 Cal. 424, 431 [229 P. 30] ; *Williams* v. *Southern Pac. Co.,* 173 Cal. 525, 539, 540 [160 P. 660] ; 19 Cal.Jur. 636, sec. 67.) "

In *Blodgett* v. *B. H. Dyas Co.,* 4 Cal.2d 511, the court said at page 513 [50 P.2d 801] : "The evidence shows that the lack of the handrail was neither the proximate nor any cause of plaintiff's fall. Any violation of the ordinance by the defendant would, therefore, be immaterial."

 It is a familiar rule, so often announced by our appellate tribunals as to have become axiomatic, that contribu-

tory negligence is a question of fact for the jury to determine and that the finding of the jury upon that issue will not be disturbed upon appeal if there is any substantial evidence or reasonable inference to support it.

Appellants argue that since it is undenied that Mrs. Freeman had full knowledge of the inflammable and explosive qualities of the dust, she should have merely dumped the dust into the scoop-like hopper (which they, of course, contend was a safety device to prevent escape of flame and smoke from the chute opening) and then caused the dust to cascade down by closing the hopper—thus "sealing up" the chute opening. Since she knew it was an "incinerator," and not merely a "wet garbage" chute, they argue that her actions were negligent as a matter of law. This assumes, of course, that in addition to knowing she was dumping the dust into an incinerator, Mrs. Freeman had reason to know as a prudent person in the exercise of due care, that there was then a likelihood of the existence of a fire therein. However, there is evidence in the record—which the jury was certainly entitled to believe—that respondent had appellant-wife's assurance that no fire need be anticipated except on Friday, and, as a necessary implication of such assurance, that the dust could, with safety, be deposited in the incinerator on other days.

In support of their contention that respondent-wife was guilty of contributory negligence as a matter of law, appellants cite *Hurtel* v. *Albert Cohn, Inc.,* 5 Cal.2d 145, in which it is said at page 147 [52 P.2d 922] : ". . . it is a well settled rule in this state that the violation of a statute or ordinance constitutes negligence *per se* (19 Cal.Jur. 632 and cases there cited), and that it constitutes contributory negligence *if the failure to comply with the ordinance contributes directly to the injury.*" (Emphasis added.)

Under the rule set out in the Hurtel case, then, it must be found that the violation of the statute—as in all other cases testing the application of the doctrine of contributory negligence—contributed "directly" or "proximately" to the injury suffered by respondent. In the instant case, the jury had before it evidence which would reasonably justify a conclusion that there was no proximate causation between the removal of the "safeguarding" hopper and the injury to respondent. Can it not be said that the real or proximate cause of the explosion was the presence of a fire in the incinerator (which, it would seem, the jury was privileged to infer) at

a time when plaintiff had adequate reason for believing that no such fire existed? The jury might well have concluded that there was no danger at all associated with dumping the dust into the incinerator when no fire was present therein—for the evidence seems to indicate that the dust would not explode or go aflame unless thrown on an open fire or contacted by heat, other than an open flame, of 600 degrees or more.

In a sense, then, and since there is evidence of the ''no fire except on Friday'' assurance, respondent was not ''removing'' any ''safety device or safeguard'' in contravention of the statute—for she had justification for believing that on the then condition of the incinerator (no fire burning) there was no reason to fear that any flames or explosion would follow her deposit of the oak dust into the chute. This is certainly not the same as a case where, for instance, one operating a piece of industrial machinery might remove a safeguard or safety device intended to protect against dangers incidental to such operation, and then, in virtue of such removal, sustain the identical injury which the safeguard was meant to protect against.

In *Flach* v. *Fikes*, 204 Cal. 329, the court said at page 332 [267 P. 1079]: ''Contributory negligence is an affirmative defense and it must be pleaded and proven by the defendant. Unless the evidence on the part of the plaintiff shows that the injured party was guilty of contributory negligence the defendant must show by a preponderance of the evidence that said injured party was guilty of such negligence. . . . This question is one for the determination of the jury or the trial court and their finding thereon is binding upon an appellate court (*Scott* v. *San Bernardino Valley etc. Co.*, 152 Cal. 604 [93 P. 677]; *Clark* v. *Bennett*, 123 Cal. 275, 277 [55 P. 908]; *Schneider* v. *Market Street Ry. Co.*, 134 Cal. 482, 488 [66 P. 734]).''

We conclude, therefore, that appellants' contention that respondents were guilty of contributory negligence as a matter of law cannot be sustained.

We shall now discuss appellants' contention that the award of $12,500 was grossly excessive. It is not urged that the amount of $375 for the medical expenses incurred by respondent-husband in the treatment of the wife's injuries was excessive, but only that the remaining $12,125 for the injuries sustained by respondent-wife was grossly excessive. No authorities are cited by appellants upon this point.

In the recent case of *Estrada* v. *Orwitz,* 75 Cal.App.2d 54 [170 P.2d 43], in which an award of $4,000 damages for improper extraction of five teeth was affirmed, this court said at page 60: ''We cannot hold, as a matter of law, that the judgment is excessive. The judgment is within the realm of reason. The rule applicable to such a situation was aptly stated in *Stanhope* v. *Los Angeles Coll. of Chiropractic,* 54 Cal.App.2d 141, at page 148 [128 P.2d 705], as follows: 'The assessment of damages is first of all the province of the jury, and secondly, that of the trial court when passing upon a motion for a new trial, therefore, an appellate court will not disturb the verdict unless it is so grossly excessive as to immediately suggest that it was the result of passion, prejudice or corruption on the part of the jury. [Citing two cases.] Moreover, the jury's award of damages cannot be set aside on appeal where there is nothing to suggest that the jury acted through passion, prejudice or corruption.' (See, also, *Hicks* v. *Ocean Shore Railroad, Inc.,* 18 Cal.2d 773, 785 [117 P.2d 850]; *Koyer* v. *McComber,* 12 Cal.2d 175, 182 [82 P.2d 941]; *Johnson* v. *McRee,* 66 Cal.App.2d 524, 529 [152 P.2d 526].) We cannot say, as a matter of law, that the jury acted through passion, prejudice or corruption. It must be remembered that the purchasing power of the dollar is much less than it was a few years ago, so that a verdict that might have been considered very high or even excessive then, would, today, be within the realm of reason. That this is a proper factor to consider on this question was recently held in *Butler* v. *Allen,* 73 Cal.App.2d 866, 870 [167 P.2d 488] (hearing denied in Supreme Court) . . .''

The record shows that at the time of injury respondent-wife was 32 years old and was able to do a man's work while working with her husband in his business of laying and sanding of hardwood floors. Her face, neck, hands and one of her wrists were burned. The burns on her face were second degree burns and one of her wrists was scarred as the result of a third degree burn. She suffered severe pain after the injury and had to remain in bed for two weeks. At the time of the trial, some eight months after the injury, the only work she was able to do was some sweeping for her husband, but she had difficulty in holding the broom because she had lost the strength in her hand. She still suffered pain in her hands, stating, ''they draw and itch, the skin does, all of the time.'' She had deformed and unnatural skin on her

hands. There was a scar on her wrists, one of her knuckles was mashed down, and she was unable to close her hand. There was a scar on her neck and she still felt an itching, drawing and pulling in her face, stating: "I have to . . . make all kinds of faces to keep my mouth open; you see it is quite a good deal smaller than it was, my upper lip is very near gone."

In view of the injuries above set forth, and bearing in mind that the jury had the opportunity of observing respondent-wife, it does not appear to us that the amount awarded by the jury was, in the language of the Supreme Court in *Bellman* v. *San Francisco High School Dist.*, 11 Cal.2d 576, at page 586 [81 P.2d 894], "so excessive, when compared with a sum reasonably warranted by the evidence showing the nature and extent of the injuries received, as to shock the sense of justice and raise the presumption that the amount was arrived at as the result of passion and prejudice rather than upon a fair and honest consideration of the facts." We are rather inclined to the view that the jury felt that the facial disfigurement and other injuries received by this young woman justified a substantial award and reflected that amount in their verdict. Furthermore, the learned trial judge, who had the opportunity of hearing the evidence and observing the respondent-wife, and whose powers in ruling upon a motion for a new trial are much broader than is the power of this court upon appeal, must not have considered the award excessive as he denied appellants' motion for a new trial.

Appellants next contend that the respondent-husband "and his counsel were guilty of highly prejudicial misconduct in the former's gratuitous testimony that the defendants were insured, and in the latter's emphasis of such testimony in his argument to the jury."

The testimony of respondent-husband referred to is as follows: "Q. You just tell us what she said. A. She [appellant-wife] asked how my wife was getting along and I told her, etc. . . . I asked her would she mind paying me the remainder of the bill, as I had some extra debts on hand, and she told me not to worry about that, that she was insured, and she would take care of that. Q. What was that? A. Mrs. Nickerson said, 'I will take care of that,' and she paid me the balance of the bill before I finished the job. Q. Did she say

anything else? A. She told me to contact her in two or three days and I finished the job I think on Wednesday, and she said that she hadn't heard any more, and I saw her on Friday and she said that she had been instructed not to say anything, and said that she was sorry, and that was the last I ever talked to her.''

Appellants assert: ''The conversation to which the plaintiff Louie K. Freeman testified was in nowise connected with any admission of the defendant, and the alleged statement of defendant that she was insured was unwarrantedly and gratuitously injected by the plaintiff into this story of the conversation with reference to the payment by defendant of the bill for his work on the floors. This subject had no connection with the accident, was not introduced by the defendants, and certainly it cannot be held that the mention by plaintiff of the fact that defendant was insured was incidental to any relevant or material evidence in the case. On the other hand, it is quite evident that it was deliberately injected into his testimony by the plaintiff Louie K. Freeman.''

It is well settled in California that gratuitous references, either in the evidence or the argument, to the fact that a defendant carries liability insurance is prejudicial misconduct justifying a reversal. (*Squires* v. *Riffe,* 211 Cal. 370 [295 P. 517] ; *Rising* v. *Veatch,* 117 Cal.App. 404 [3 P.2d 1023] ; *Citti* v. *Bava,* 204 Cal. 136 [266 P. 954] ; *Sischo* v. *City of Los Banos,* 26 Cal.App.2d 642 [80 P.2d 116, 1020] ; *Nichols* v. *Smith,* 136 Cal.App. 272 [28 P.2d 693] ; *Schellenberg* v. *Southern Cal. M. Co.,* 139 Cal.App. 777 [35 P.2d 156] ; 10 Cal.Jur. 10-Yr.Supp. 664.)

The language of the Supreme Court in *Citti* v. *Bava, supra,* at page 138, is typical of the above cited cases. Referring to proof of a settlement disclosing ''the fact that the defendant was indemnified by a policy of insurance,'' it is there said: ''The evidence of the settlement, alone, not connected up with any act or admission of the defendant and concerning which he had nothing to do was clearly inadmissible in evidence. The error in admitting it might not in and of itself require a reversal, but coupled with the avowed purpose and successful attempt of plaintiff's counsel to get before the jury not only the fact of the settlement but also that the settlement was made by the insurance carrier of the defendant, puts the case in a position where section 4½ of article VI of the Constitution will not save the judgment. The natural tendency

of a line of examination that suggests to the jury that the defendant is indemnified against any judgment for damages against him is highly prejudicial to his rights, especially in a closely balanced case where the evidence otherwise would be easily sufficient on appeal to support a verdict either for the plaintiff or for the defendant. Such attempts on the part of counsel have frequently been held to be improper and prejudicial. . . . From an examination of the record in this case it is impossible for us to state that the jury would not have found a different verdict, had the objectionable examination not taken place and the evidence not been admitted.''

In *Sischo* v. *City of Los Banos, supra,* the plaintiff testified to a conversation with the mayor of defendant city in a hospital shortly after the accident (p. 646): '' 'A. Well, the start of that conversation of course was about myself, how I was getting along, and how I felt, and how I was resting, and that he expressed his sympathy, the fact that I was so seriously injured, but the conversation led to the point where he said that the City of Los Banos in this matter was very lucky, due to his forethought in the matter; he said: ''We have taken out insurance, we only took out insurance only ten days before you had fallen.'' ' '' The appellate court said at page 647: ''That the admission of this testimony was prejudicially erroneous is shown by the case of *Squires* v. *Riffe,* 211 Cal. 370 [295 P. 517]. The opinion of Toscano had no relevancy whatever to the issues involved. . . . The statement as to the insurance was not involved in anything connected with the accident. . . . As stated in the case of *Squires* v. *Riffe, supra,* it must be presumed that counsel for the plaintiff knew the answer which his client would give, and that it would serve no purpose except to show that the city carried insurance.''

Respondents contend that the foregoing decisions cited by appellants are not applicable to the instant case for the reason that the production of evidence of insurance is not misconduct where that evidence is an integral and inseparable part of other evidence that is material, as, for example, an admission.

One of the decisions relied upon by respondents is the case of *Walter* v. *England,* 133 Cal.App. 676 [24 P.2d 930] (hearing denied), in which the patient of a dentist, who subsequently was sued in a malpractice action went to the dentist and suggested that, inasmuch as all that plaintiff wanted was

reimbursement for expenses, the dentist go to the insurance company, tell them he had made a mistake, and get the insurance company to make the desired reimbursement. Evidence that the defendant thanked the plaintiff and then stated: "I'll go down to my insurance company when I am in San Francisco and tell them I have made a mistake . . ." was held to be proper evidence. The court said at pages 688-9: "It is a general rule that in this class of cases reference to the fact that a defendant is indemnified by a policy of insurance is prejudicial error, and the evil effect upon the jury of such reference cannot be cured by striking out the testimony, nor by an admonition to the jury not to consider it in any way. (*Rising* v. *Veatch, supra; Squires* v. *Riffe,* 211 Cal. 370 [295 P. 517]; *Citti* v. *Bava,* 204 Cal. 136 [266 P. 954].) This rule, however, does not prevent such evidence being proper where the conversation involves an admission of responsibility. (*King* v. *Wilson,* 116 Cal.App. 191 [2 P.2d 833]; *Harju.* v. *Market St. Ry. Co.,* 114 Cal.App. 138 [299 P. 788]; *McPhee* v. *Lavin,* 183 Cal. 264 [191 P. 23]; *Lahti* v. *McMenamin,* 204 Cal. 415 [268 P. 644].) In the case before us the conversation amounted to an admission that the appellant had made a mistake. We have heretofore held that this admission, when considered with all the testimony in the case, is subject to interpretation as an admission of negligence, and the jury were the judges of its effect.

"The evidence having been properly admitted, we find no prejudicial error in referring to it in the argument to the jury."

And in *McPhee* v. *Lavin,* 183 Cal. 264, the court said at page 269 [191 P. 23]: "The errors of law assigned upon admission of testimony over defendant's objections and motions to strike so far as in any way suggestive of prejudice, arise upon the admission in evidence, as part of a conversation had with defendant, of defendant's declaration to plaintiff immediately after the collision that he carried accident insurance that would provide for plaintiff if he had suffered injury. As this was admitted as tending to show an acknowledgment of responsibility by defendant for the accident, we think it was proper evidence."

In *Dullanty* v. *Smith,* 203 Cal. 621, the court said at page 625 [265 P. 814]: "The fact that this testimony contained, in addition to unobjectionable matter, references to the insurance of defendant, did not necessarily make it inadmissible

for all purposes. It is true that the court frowns upon any attempt to show that a defendant carries indemnity insurance, but where, as here, there is an entire absence of any indication whatsoever of lack of good faith on the part of plaintiff, evidence of this character, as an admission against interest, or for certain other purposes, may be received, notwithstanding the fact that it contains material which under other circumstances would be objectionable (*Upham Co.* v. *United States etc. Co.,* 59 Cal.App. 606, 610 [211 P. 809]; see, also, *McPhee* v. *Lavin,* 183 Cal. 264, 269 [191 P. 23], treating of the very situation here under consideration).''

And in *North* v. *Vinton,* 17 Cal.App.2d 214, this court said at page 219 [61 P.2d 950]: ''With respect to the two witnesses whose testimony is made the subject of defendant's second complaint, it may be stated generally that while a reference to the fact that defendant is insured against liability may be highly prejudicial, and courts do not hesitate to set aside verdicts of juries where such evidence is improperly admitted, it is a well settled exception to the general rule that where a defendant makes a statement which may be fairly construed as an admission or acknowledgment of responsibility and as a part of the same statement makes incidental reference to the fact that he carries insurance, the entire statement is admissible, not to prove the fact of insurance, but solely because the reference to the insurance is part of the admission. (*Handley* v. *Lombardi,* 122 Cal.App. 22 [9 P.2d 867], and cases cited; *Harju* v. *Market Street Ry. Co.,* 114 Cal.App. 138 [299 P. 788]; *Noble* v. *Bacon,* 129 Cal.App. 177 [18 P.2d 699].) In other words, under the circumstances above stated the entire statement is admissible, even though it does reveal that the defendant carries indemnity insurance. (*King* v. *Wilson,* 116 Cal.App. 191 [2 P.2d 833].)''

The foregoing cases would seem to support the proposition that reference to insurance is not improper if it is an integral part of competent testimony. In the instant case it would appear that the reference to insurance was an integral part of an admission of liability. The jury was certainly entitled to infer from appellant-wife's statement to respondent-husband, telling him ''not to worry about it, that she was insured and would take care of it,'' that she felt that appellants were responsible for the situation and that the

statement with respect to insurance was to be construed as an admission of liability. Even in *Squires* v. *Riffe, supra,* cited by appellants in support of their argument of misconduct, the court cited with approval the following from *Citti* v. *Bava,* 204 Cal. 136 [266 P. 954]: "The evidence of the settlement alone, *not connected up with any act or admission of the defendant* . . . was clearly inadmissible in evidence." (p. 374; emphasis added.)

If the mention of defendants' insurance coverage is brought into the case gratuitously and is unrelated to a genuine issue in the case, it would, under the authorities, be misconduct justifying a reversal, but if the reference to insurance is connected up with an admission of negligence or of liability, or any other relevant admission, it will not be deemed misconduct, even though the law frowns upon references to defendants' insurance coverage. In view of the fact that the mention of insurance by respondent-husband upon the witness stand was related to and in connection with what may well be construed as an admission of liability on the part of appellants, we cannot hold that it was improper or that it constituted misconduct in the instant case.

Appellants contend further that counsel for respondents deliberately emphasized the asserted prejudicial testimony in his closing argument to the jury. In the course of his argument respondent's counsel stated: "Ladies and gentlemen you have heard the testimony of my client Mr. Freeman. It is all right here in this transcript. I will show it to you and you check me up and see that I read it correctly." Counsel then read to the jury the testimony hereinbefore set forth and continued as follows: "Now, ladies and gentlemen, that was Mrs. Nickerson's attitude when she was free to talk with the plaintiff, but after someone had instructed her not to talk any more, the door was closed forever and all my clients could do was to wait for someone to come and see them and do what was right by them, but they never came and that is why we are here."

Appellants urge that "counsel's reading, and pointing out in the transcript, of the testimony that the defendant said that she was insured and that she had been instructed not to say anything, admit of no other conclusion than that the fact that the defendants were insured was strongly and emphatically brought to the jury's attention."

The argument of counsel does not appear in the reporter's transcript, but the criticized portions thereof are set out in an affidavit by appellants' counsel in support of appellants' motion for a new trial and counsel for respondents in his counteraffidavit does not deny that he made such statements in his argument. We have serious doubts as to whether the asserted portions of the argument of respondents' counsel are properly a part of the record on this appeal, but, assuming that the matter is properly before this court, we believe that the evidence in question, having been properly admitted, and no motion having been made to strike out any part of it, it was not improper for counsel to read it to the jury and to comment upon it in his argument, for, as stated in *Walter v. England, supra,* "The evidence having been properly admitted, we find no prejudicial error in [respondents' counsel] referring to it in the argument to the jury."

Counsel for respondents in his counteraffidavit upon appellants' motion for a new trial states that he "did not seek to convey to the jury that the defendants were insured nor did he convey to the jury that the defendants were insured; that this affiant never alluded to insurance in his argument at any time other than to read the record of the testimony as the same was reported by the court reporter." We are unwilling to assume that counsel for respondents acted in bad faith and we do not believe that the comment or argument of counsel added anything to the statement of appellant-wife in telling respondent husband "not to worry about that, that she was insured, and she would take care of that." Evidently the learned trial judge was of the same opinion, for after having heard the evidence of the witness and the argument of counsel, claimed to be prejudicial, he denied appellants' motion for a new trial.

Before leaving this phase of the case we think it proper to add that appellants made no objection to the said testimony, and made no motion to strike it out, nor did they make any assignment of misconduct or motion for a mistrial. Neither did they offer any instruction that no insurance company was a party to the action, nor did they make any objection or assignment of misconduct at the time the statements were made in the argument. Such motions, objections and assignments were made in practically all of the cases relied upon by appellants in support of their claim of preju-

dicial misconduct, and the fact that appellants' counsel did not make them in the instant case indicates that counsel did not at the time regard them as improper or prejudicial.

Appellants' final contention is that the trial court erred in the giving of seven instructions, in refusing to give one instruction, and in modifying two instructions proposed by appellants.

 Appellants make essentially the same criticism of four instructions, arguing that they were improper because they did not distinguish between a property owner's knowledge of a "condition" on his premises and his knowledge or duty to know of a "danger" connected with that "condition." A reading of the instructions shows that they are standard instructions respecting the duty owed by an owner of premises to an invitee. Appellants do not argue that the instructions incorrectly set out the general law governing the owner-invitee relationship, but only that, because of the peculiar facts of this case, the instructions were not a fair coverage of their duty. It is their position that while they could know of the existence of the "condition"—i. e., fire in the incinerator—they may not have known of the "dangers" connected with depositing the oak dust down upon that fire. Appellants' reasoning seems faulty for the reason that there is evidence in the record that appellant-wife was made fully aware of the dangers which were inherent in having a fire in the incinerator at a time when the dust was deposited. With such evidence in the record, the trial court would be justified in giving the general instructions on owner-invitee duties— for, being aware of the danger, it was Mrs. Nickerson's duty to inform her invitees that the incinerator had been lighted.

 The next two criticized instructions are as follows: "The owner is not bound to discover defects which reasonable inspection would not disclose, and he is entitled to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. In brief, there is no duty to give the invitee notice of an obvious danger. In the absence of appearances that caution him, or would caution a reasonably prudent person in like position, to the contrary, the invitee has a right to assume that the premises he was invited to enter are reasonably safe for the purposes for which the invitation was extended, and to act on that assumption." "It follows, therefore, as a matter of law, that the status of the plaintiffs was, in law, that of

an invitee, and that it was the duty of the defendants to the plaintiffs to keep and maintain the premises in a reasonably safe condition. The degree of care required to be taken in such a situation is that of reasonable care."

Appellants' attack on these two instructions is apparently based upon the lack of evidence that the incinerator and chute were mechanically defective. There is no evidence in the record that there was anything mechanically wrong with the chute or the incinerator—but the foregoing instructions do not require, for their justification, that the garbage unit be mechanically defective. The dangerous "conditions" of which an owner of premises must warn his inviteee are not confined to mechanical dangers. Maintaining safe premises in the present case included the duty of warning plaintiffs of the presence of fire in the incinerator—for, while dumping the dust down into the incinerator was a harmless activity so long as no fire was burning, it became fraught with peril the moment a fire was started. In that sense, then, a dangerous condition was created, and lack of defects in the mechanical agency used was immaterial.

The final instruction in this group is as follows: "The plaintiff was entitled to rely upon the presumption that the premises would be maintained in a reasonably safe and proper way, and she was entitled to rely upon this presumption unless and until it would be apparent to a reasonably prudent person similarly situated as was the plaintiff that said premises were not maintained in a reasonably safe way."

Appellants challenge this instruction by saying that it does not state that in order to rely upon such presumption of due care by defendant, plaintiff herself must have been exercising due care for her own safety. (Citing *Angelo* v. *Esau,* 34 Cal.App.2d 130 [93 P.2d 205].) While such is undoubtedly the law, in *Fowler* v. *Allen,* 49 Cal.App.2d 214 [121 P.2d 41], the court said that although it is preferable in such instruction to instruct that a plaintiff taking advantage of that assumption of due care by defendant must himself be exercising due care for his own safety, a failure to so condition the instruction does not constitute reversible error (p. 219). Furthermore, the instruction must be considered as a whole and the jury was told in a number of other instructions that respondent-wife "was obliged under the law to use ordinary care for her own safety."

Appellants next contend that the trial court committed reversible error in refusing to give the following instruction: "You are instructed that evidence of the oral admissions of a party, other than his or her own testimony in this trial, ought to be viewed by you with caution."

Appellants rely upon section 2061 of the Code of Civil Procedure which enumerates certain matters upon which the jury is "to be instructed by the court on all proper occasions," and subdivision 4 thereof reads: "4. That the testimony of an accomplice ought to be viewed with distrust, and the evidence of the oral admissions of a party with caution." Appellants state: "This instruction . . . should have been given, especially in view of the fact that the sole evidence tending to establish that defendants by their employee lighted the incinerator before the accident, is testimony as to the oral admission of Mrs. Nickerson." This statement of appellants is not correct because the record shows that aside from the admissions of Mrs. Nickerson that she had had the incinerator fire started without warning respondents, and that she felt that the explosion was her fault, there is the testimony of appellants' own witness, Douglas Felt, to the effect that he had started the fire on that Monday.

In the very recent case of *People* v. *Koenig,* 29 Cal.2d 87 [173 P.2d 1], the prosecution relied on evidence of defendant's oral admission of guilt, but the trial court failed to give an instruction to the jury to view such evidence with caution. In affirming the judgment of conviction our Supreme Court said at page 94: "Section 2061 of the Code of Civil Procedure, subsection 4, provides that on all proper occasions the jury is to be instructed 'That the testimony of an accomplice ought to be viewed with distrust, and the evidence of the oral admissions of a party with caution.' No such cautionary instruction was given by the trial judge nor was one requested. It was formerly the rule that even the refusal to give such an instruction was not error on the ground that the instruction amounted to a mere commonplace statement of what every jury was believed to know. (*People* v. *Raber,* 168 Cal. 316 [143 P. 317].) Later the code section was held unconstitutional as authorizing comment on the evidence. (*Hirshfeld* v. *Dana,* 193 Cal. 142 [223 P. 451].) In *People* v. *Dail,* 22 Cal.2d 642 [140 P.2d 828], the Hirshfeld case was overruled, and it was held that the section was never unconstitutional. In the Dail case an instruction was given

directly contrary to the section with respect to the testimony of accomplices. No admissions were involved. In *Conger* v. *White*, 69 Cal.App.2d 28 [158 P.2d 415], such an instruction with respect to admissions was requested and refused. The court held this refusal to be prejudicial error in view of the equivocal nature of the admissions relied upon. The admissions in the instant case, if true, were far from equivocal. In view of the code section, however, such a cautionary instruction should have been given. In view of the record in this case, however, it is improbable that had this instruction been given, the jury would have discounted this testimony to such an extent that it would have returned a different verdict.''

We believe that the requested instruction should have been given, and that the failure to do so constituted error. However, whether such error is reversible error in a case depends upon the entire record in said case. In view of the record in this case, which we have read carefully, we are convinced that the failure to give the requested instruction did not constitute reversible error.

 Appellants' final objection to the instructions concerns the modification by the court of two instructions proposed by appellants relative to sections 6403 and 6406 of the Labor Code. In this respect they rely on the rule expressed in *Hurtel* v. *Albert Cohn, Inc., supra* (5 Cal.2d 145) to the effect that the violation of a statute or ordinance constitutes negligence *per se,* and that such violation amounts to contributory negligence if it proximately contributes to the injury sustained. The court, however, modified the instructions so as to include only the express language of said sections 6403 and 6406, and eliminating from its charge the rather long formula instructions presented by appellants based on the Labor Code sections. The court properly modified these proposed instructions, because, first, they omitted some elements that should have been included if they were to be given to the jury, and second, they were unnecessary because the proper parts thereof were fully covered by other instructions. In fact, a reading of all the entire instructions given by the court shows that the jury was fully and fairly instructed upon all phases of the case.

In view of the foregoing the judgment is affirmed.

Peters, P. J., and Ward, J., concurred.