[Civ. No. 8040. First Appellate District, Division Two.—June 11, 1932.]

P. BRUNETTO, Respondent, v. E. SPEDIACCI et al., Defendants; L. H. FITZSIMMONS, Appellant.

254

Myrick & Deering and Scott for Appellant.

Dreher & McClellan for Respondent.

STURTEVANT, J.—As a result of a collision of automobiles the plaintiff was injured and he commenced this action to recover damages. The jury returned a verdict in favor of the plaintiff and from the judgment entered thereon the defendant L. H. Fitzsimmons has appealed and has brought up a bill of exceptions.

At about 4 A. M. on the morning of January 9, 1929, the plaintiff and his partner, E. Tabacco, were driving their truck loaded with vegetables on the highway known as El Camino Real northerly toward San Francisco. The defendant L. H. Fitzsimmons was driving a Studebaker sedan southerly toward San Jose. At a point near Tanforan the defendant drove so far to the left-hand side of the road that his car brushed the truck on its left-hand side. Both vehicles were stopped and at that time there was a distance of from five to seven feet between the rear ends. The occupants of both vehicles alighted and engaged in words. Before the controversy was settled a man by the name of Basso approached from the south driving an Essex car and collided with plaintiff's truck. The impact was slight. The cars were left in that position. Shortly thereafter a truck driven by the defendant Spediacci approached from the south and collided with the Essex. It did so with such force as to drive the front end of the Essex under the truck. At the moment of the last collision the plaintiff was on the ground in front of his truck for the purpose of cranking it. When

the collision last mentioned occurred the force was such as to drive the Essex and the plaintiff's truck forward and the plaintiff was knocked down by the front end of his own truck and suffered the injuries above mentioned. Before the cars were separated a Ford car approached from the south and hit the rear end of Spediacci's truck. The morning was dark and a heavy fog prevailed. At the place of the accident the highway is divided into four lanes. There was evidence that the plaintiff's truck was in the right-hand lane and that on the right-hand side of the truck, about two feet in distance, was a ditch. The Studebaker car after brushing the plaintiff's truck came to a stop as above stated about five or seven feet south of the rear end of the plaintiff's truck. At the time that the Spediacci truck approached there was evidence that the Studebaker still stood in that position. Mr. Spediacci testified that the headlights on the Studebaker caused him to think that a head-on collision was possible and therefore he attempted to drive to the right and, in doing so, he hit the Essex car because he was blinded with the headlights on the Studebaker. In this connection it may be said that the evidence was distinctly conflicting. Mr. Fitzsimmons testified that he had driven the Studebaker at once to the western side of the road and that it stood parked with its right-hand wheels in a ditch. The time elapsing between the moment that the Studebaker car and the plaintiff's truck sideswiped each other and the time that the plaintiff was knocked down was variously stated by different witnesses. Mr. Fitzsimmons estimated the length of time as being fifteen minutes. Other witnesses estimated the time as much shorter. Neither plaintiff's truck nor the Studebaker car suffered anything but minor injuries. The motive operation of neither was injured.

■ 1. The defendant contends that the injury sustained by plaintiff was not the proximate result of any negligence on his part. In this connection he quotes evidence to the effect that at a place 200 feet north the plaintiff could have driven his car out of the highway and parked it. He quotes evidence to the effect that there was no ditch on the right-hand side of the plaintiff's truck. He claims that the plaintiff's injury was brought about by reason of the fact that the plaintiff allowed his truck to remain in the highway. The evidence quoted does not tend to prove an independent inter-

vening cause. It was pertinent to the issue of contributory negligence and below we have given it due consideration. The defendant concedes that the trial court properly instructed the jury on this interesting subject and both parties have quoted the rule as stated in *Merrill* v. *Los Angeles Gas & Elec. Co.*, 158 Cal. 499 [139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559, 111 Pac. 534]. In that case, at page 503 of 158 Cal., speaking of the legal concept of the proximate cause, the court said: "It is based on the principle that consequences which follow from the original wrong in unbroken sequence, without an intervening sufficient independent cause, are natural and proximate, and for these the original wrongdoer is responsible." The rule of law to be followed is therefore not doubtful. If the jury believed the testimony given by the witnesses called by the plaintiff, we think it is clear that it did not err in finding that there was no independent intervening cause.

2. In his second point the defendant asserts that the plaintiff was guilty of negligence in failing to have his truck equipped with clearance lights at the rear. In this connection he quotes the record showing that plaintiff's truck was at least 84 inches in width, that on the truck there was one tail-light and, as he claims, no clearance light. The defendant then cites subdivision (d), section 100, of the California Vehicle Act, as amended by Stats. 1929, p. 532. By the terms of the statute the rear light on the truck should have been one "displaying a green or red light visible under like conditions from a distance of five hundred feet to the rear of the vehicle". There was evidence that there was a light at the rear end, but there was no evidence showing its color or how far the light was visible. As the burden of proof on this issue rested with the defendant, the point made by him may not be sustained.

3. It is next claimed by the defendant that the plaintiff was guilty of negligence in permitting his truck to stand upon the public highway for several minutes, variously estimated at from five to fifteen, and until two collisions had occurred. He claims that the plaintiff's act was in violation of section 136 of the California Vehicle Act (Stats. 1923, p. 561). The portion of that section relied on is as follows: "No person shall park or leave standing any vehicle whether attended or unattended upon the paved or improved or main

traveled portion of any public highway, *outside of a business or residence district when it is practicable* to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; . . . " (Italics ours.) There is no evidence that the place where the accident happened is "outside of a business or residence district". The evidence was conflicting as to whether under the circumstances of this particular case it was "practicable" to park the loaded truck off the main traveled portion of the highway. The witnesses for the plaintiff testified that, on the immediate right-hand side of plaintiff's truck, there was a space of two feet which consisted of mud; and that immediately to the right of the mud was a ditch. True it is there was some evidence that at a point 200 feet north was parking room on the right-hand side; however, in view of the other facts of the case, it was clearly a question for the jury to determine whether it was practicable, at the particular time and place, to park the truck off of the highway.

4. The defendant claims that Mr. Spediacci was negligent. The plaintiff replies that even though Mr. Spediacci was negligent the plaintiff is not bound thereby. (*Crabbe v. Rhoades,* 101 Cal. App. 503 [282 Pac. 10].) The reply is entirely sufficient.

5. The defendant complains of instructions numbers 6, 7 and 13, which were given at the request of the plaintiff. Having quoted them, he says: "With respect to the foregoing, these instructions under the facts of this case could only have been interpreted by the jury as meaning that if they found three or four different tort-feasors all guilty of negligence, even though the successive acts of negligence were separated one from the other in time and independent of each other nevertheless they were at liberty to find a verdict against all of the tort-feasors. This does violence to the principle of law exonerating the original tort-feasors where the injury arose by reason of an efficient intervening cause." The attack may not be sustained. It is settled law that all of the instructions are to be read together. Proximate cause was clearly and correctly defined in instruction number 6. The proximate cause of an injury was clearly and correctly defined, in instruction number 7, as excluding "an efficient intervening cause". Instruction number 13 was addressed to the liability of joint tort-feasors. It con-

tained nothing weakening the rules which had been correctly set forth in instructions numbers 6 and 7. It follows that the instructions contain nothing which would have warranted the jurors in assuming that any defendant would be liable for an injury produced by "an efficient intervening cause" which he had not put in motion.

6. Acting upon the request of the plaintiff, the trial court instructed the jury as follows: "If you find that any defendant in this action advances a theory which would exonerate himself and hold the other defendants or any other defendant liable I charge you that you are not required to choose between the different theories but you may, if the evidence warrants it, adopt a theory which holds all defendants liable." The defendant asserts that the instruction was misleading and utterly without justification. If the jury had found all of the defendants liable the question presented might be material, but the verdict was against defendant Fitzsimmons only. A bare reading of the instruction shows that it could not have affected the verdict because the jury did not include in its verdict other defendants but omitted them. By its terms the jurors were not allowed to act on any "fantastic theory", but they were authorized to hold any defendant liable "if the evidence warrants it". No other objection to the instruction is assigned and we see none.

7. Finally it is contended by the defendant that instruction number 24, which was given at the request of defendant Spediacci, was objectionable. That instruction is as follows: "In a case where the alleged negligent act of the driver of an automobile consists of an omission of duty suddenly and unexpectedly arising, it is incumbent upon the plaintiff to show that the circumstances were such that the driver of the automobile had an opportunity to become conscious of the facts giving rise to the duty and a reasonable opportunity to perform such before he can be held liable on the grounds of negligence." The defendant argues that the instruction applies the doctrine of sudden peril without the well-defined limitation that the peril should not be created by the person relying on the doctrine. We think that the objection is without merit. If the plaintiff were appealing he might present the point; but a co-defendant is in no position to urge it. The fact that one defendant was acquitted

of blame does not help a co-defendant. The jury was entitled to bring in a verdict against one or all of the defendants. (*Goehring* v. *Rogers*, 67 Cal. App. 253, 259 [227 Pac. 687].)

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 11, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 9, 1932.