[Civ. No. 9568. First Appellate District, Division Two.—June 4, 1935.]

LOUIS LAUBSCHER, Jr., Plaintiff and Respondent, v. RICHARD D. BLAKE, Executor, etc., Appellant; LOUISA ROSE, Cross-Complainant and Respondent; SUHR & WIEBOLDT (a Corporation), Cross-Defendant and Respondent.

Redman, Alexander & Bacon and Herbert Chamberlin for Appellant.

George K. Ford and Albert A. Axelrod for Respondent Laubscher.

J. Hampton Hoge for Respondent Rose.

Myrick & Deering and Scott for Respondent Suhr & Wieboldt.

SPENCE, J.—Plaintiff brought this action seeking to recover damages for personal injuries sustained when a Lincoln limousine in which he was riding collided with a Buick automobile driven by defendant Kennedy. The car in which plaintiff was riding was owned and driven by defendant Rose who had been engaged by defendant Suhr & Wieboldt, a corporation, to drive it to Woodlawn Cemetery as a funeral car. Defendant Rose filed a cross-complaint against defendant Kennedy for damages to his automobile. Defendant Kennedy likewise filed a cross-complaint against defendant Rose and defendant Suhr & Wieboldt for damages to his automobile and for damages for personal injuries. Upon a trial by jury, three verdicts were returned. The first was a verdict on the complaint which awarded plaintiff the sum of $7,500 against defendant Kennedy but denied plaintiff relief against defendant Rose or defendant Suhr & Wieboldt. The

second was a verdict on the cross-complaint of defendant Rose which awarded him the sum of $350 against the defendant Kennedy. The third was a verdict on the cross-complaint of defendant Kennedy which denied him relief against defendant Rose or defendant Suhr & Wieboldt. Defendant Kennedy appealed from each of the three judgments entered upon said verdicts.

After these appeals were taken defendant Kennedy died. Thereafter defendant Rose died. The representatives of said defendants have been substituted herein but in order to avoid confusion, we may disregard said substitutions in the discussion which follows.

The accident occurred on the afternoon of July 15, 1932, on the main highway in San Mateo County at the point where the road entering Woodlawn Cemetery intersects the main highway. Woodlawn Cemetery is owned and conducted by the Masonic Cemetery Association. The cars collided while defendant Kennedy was driving in a southerly direction on the main highway and defendant Rose was driving in an easterly direction out of the cemetery ground and across the main highway. We shall briefly describe the scene near the point of collision. The main highway is divided by a space in the center thereof devoted exclusively, except at crossings, to the double tracks of the interurban street railway. A concrete curb separates this space at all points other than crossings from the portion of the highway used by vehicles on either side of the tracks. On the west side of the highway there is a concrete strip approximately 30 feet wide which adjoins the curb on the westerly side of the tracks. Along the westerly side of the concrete strip there is a graveled shoulder approximately 16 feet in width. The southbound traffic uses the concrete strip on the westerly side of the tracks and the northbound traffic uses a similar concrete strip on the easterly side of the tracks. The cemetery fronts upon the highway and is entered by a road 40 feet in width. From the photographs in evidence it appears that this road crosses the street car tracks and continues on at the easterly side of the main highway. Between the cemetery and the highway there is a very low white fence or guard rail but it appears to be conceded that neither said fence nor any other object obstructed the view of the drivers.

Plaintiff had acted as a pallbearer at a funeral of a friend and the funeral party was leaving the cemetery to return to San Francisco. Their intended course was easterly down the cemetery road to the main highway, across the westerly side of the highway and the interurban tracks and then northerly on the easterly side of the highway. The Lincoln limousine in which plaintiff and certain other pallbearers were riding was preceded by an automobile carrying the family of the deceased. It appears from the evidence that the Lincoln limousine was traveling at a speed of from 5 to 8 miles per hour as it came along the cemetery road and started to cross the highway. The Buick car was admittedly being driven by defendant Kennedy at a much higher speed in a southerly direction along the westerly side of the main highway. Defendant Kennedy estimated his speed at between 40 and 45 miles per hour while several other witnesses testified to a much greater speed. When the Lincoln limousine arrived at a position in the middle of the concrete strip on the westerly side of the highway, the Buick car struck the left side thereof causing plaintiff's injuries, as well as seriously damaging the two cars. We deem it unnecessary to set forth the evidence in greater detail as defendant Kennedy admitted that he saw the Lincoln at a time when he was a long distance from the scene of the accident; that he knew it was a funeral car coming out but that he did not apply his brakes until he was about 35 or 40 feet from the point of impact. He testified: "I applied the brakes 35 or 40 feet, maybe 45 feet. I do not know exactly, I was traveling so fast."

It is contended on this appeal that each of the three judgments lacks evidentiary support "for the reason that the evidence conclusively shows that negligence of the defendant Rose was the sole proximate cause of the accident". We find no merit in this contention. The foregoing summary of the evidence shows that there was ample evidence to sustain the implied finding that the sole proximate cause of the accident was the negligence of defendant Kennedy. However, certain statutory provisions are cited and are urged in support of the foregoing contention as well as in support of the contention that the trial court erred in giving and refusing certain instructions.

█ Appellant takes the position that defendant Rose was a carrier of passengers for reward or hire under the duty to use "the utmost care and diligence" (Civ. Code, sec. 2100) and that defendant Rose, as such carrier, was under a duty to come to a full stop before crossing the interurban tracks. (California Vehicle Act, sec. 135.) It is sufficient answer to point out that these statutory provisions do not define the duties of defendant Rose toward defendant Kennedy. As between defendant Rose and defendant Kennedy, each was under the duty to exercise ordinary care under the circumstances and the jury was so instructed. Assuming that defendant Rose owed a higher degree of care to plaintiff, this question is immaterial on this appeal which has been taken by defendant Kennedy and not by plaintiff. █ If the instructions defining the duty of defendant Rose toward plaintiff were unduly favorable to defendant Rose, a reversal of the judgment against defendant Kennedy would not be justified upon that ground. (*Harju* v. *Market Street Ry. Co.*, 114 Cal. App. 138 [299 Pac. 788]; *Goehring* v. *Rogers*, 67 Cal. App. 253 [227 Pac. 687]; *Click* v. *Southern Pacific Co.*, 113 Cal. App. 528 [298 Pac. 839]; *Bezera* v. *Associated Oil Co.*, 117 Cal. App. 139 [3 Pac. (2d) 622].)

█ Appellant also argues that the road leading into the cemetery was a private road rather than a "public highway" and that it was therefore the statutory duty of defendant Rose to yield the right of way to defendant Kennedy. (California Vehicle Act, sec. 132.) The trial court, however, left this question of the nature of said road to the jury and in support of the verdicts we must assume that the jury impliedly found that said road was a "public highway" as defined in the California Vehicle Act. █ Section 21 of the said act defines "public highway" as every "highway, road, . . . intended or used by or for the general public . . . ", including "driveways and paths upon the grounds of universities, colleges and institutions when and during such times as such driveways and paths are open to traffic . . . " A "private road" is defined in section 22 of said act. There was ample evidence to show that said road was at all times open to the general public during the daytime and that the general public used said road to visit the burial grounds. We therefore believe that there was ample evidence to sustain the implied finding that said road was a "public highway"

as defined in said act. Appellant's claim to the contrary is based largely upon the contention that the cemetery was not an "institution" as said term is used in the act. We find no merit in this contention. It is conceded that the word "institution" has various meanings (32 Cor. Jur. 942), many of which are sufficiently broad to cover a cemetery, but it is argued that said term as used in that act should be confined "to those entities and their establishments which are commonly accepted and recognized in our statutes as state institutions". We find nothing in the language of the act which shows any intention to limit the word "institutions" to state institutions. On the contrary, we believe it is entirely clear that it was intended that the words "public highway" should include driveways upon the grounds of private, as well as public, "universities, colleges and institutions" when such driveways are open to use by the general public. We therefore conclude that appellant's assumption, contrary to the implied finding of the jury, that said road was a "private road" rather than a "public highway" as defined in said act is unwarranted; that the trial court properly left the question of the nature of said road to the determination of the jury under appropriate instructions; and that the trial court properly instructed the jury upon the statutory rights and duties of the drivers of the respective vehicles in the event that it determined that said road was a "public highway".

Appellant has challenged many of the instructions given by the trial court and has complained of the refusal of the trial court to give certain other instructions. We have read the entire charge to the jury and we are satisfied that all debatable questions raised by appellant in connection with the instructions are covered by the foregoing discussion.

█ Appellant further contends that "the court erred to the prejudice of the appellant in denying his motion to have defendant Rose submit to an eye examination". We are of the opinion that this contention is likewise without merit. Defendant Rose was not suing for damages for personal injuries and appellant's purpose in asking for the eye examination was because of appellant's suspicion that said defendant's vision was not as good as he claimed it to be on cross-examination. Assuming, without deciding, that the trial court had the power to order such an examination, we

find no abuse of discretion in the denial of appellant's motion. There was nothing in the circumstances surrounding the accident, as claimed by appellant, to indicate that said defendant's vision was defective and, furthermore, it does not appear that an examination to ascertain the sufficiency of said defendant's vision for the purpose of operating an automobile could not have been conducted by counsel in the courtroom in the presence of the jury.

■ Appellant also contends that the evidence was insufficient to sustain the judgment for $350 in favor of defendant Rose because of the alleged inadequacy of the proof of damage. Appellant does not question the rule set forth in *Konda* v. *Frumpkin,* 90 Cal. App. 384 [265 Pac. 955], but claims that defendant Rose failed to make out a *prima facie* case thereunder. We find no merit in this contention. The amount paid to repair the Lincoln limousine was shown to be $361.90. While no witness testified that this was the reasonable value of said repairs, the fact that said amount was paid for said repairs was some evidence of their reasonable value. (*Dewhirst* v. *Leopold,* 194 Cal. 424, 433 [229 Pac. 30]; *Townsend* v. *Keith,* 34 Cal. App. 564 [168 Pac. 402]; 10 Cal. Jur. 543.)

■ The final contention made by appellant is that the award to plaintiff of $7,500 is excessive as a matter of law. In support of this contention, appellant cites and relies upon *Hoover* v. *King,* 134 Cal. App. 16 [24 Pac. (2d) 871], but we find but little similarity between the injuries involved in the two cases. In the present case, plaintiff was a healthy man, 39 years of age, employed as the manager of a delicatessen business at a salary of $75 per week. As a result of the collision, he was thrown against the instrument board of the Lincoln limousine, striking the left side of his face and causing unconsciousness and the fractures and resulting injuries hereinafter described. He was bleeding from the mouth, nose and ears. While he was not taken to a hospital, he was attended by physicians and nurses at his home for some time following the accident. He remained in bed for a period of seven weeks and was at home for a period of three months. The doctor who attended plaintiff immediately after the accident testified that plaintiff suffered severe shock and was delirious for about a week thereafter; that the X-rays showed that there was a fracture of the left maxillary, before the

maxillary sinus, and there was also a fracture of the zygomatic process; that plaintiff was also badly bruised about other portions of the body; that plaintiff was thereafter troubled with severe headaches and sleeplessness; that he was in a highly nervous condition and at times would shake and tremble, which condition continued up to the time of trial approximately a year and a half after the accident; that plaintiff's vitality was run down and that he contracted pneumonia requiring hospitalization. It further appeared from the testimony that plaintiff's teeth were all loosened and bleeding as a result of the accident; that he could not eat except through a tube for some time thereafter because of the fractures above mentioned; that his nose continued to bleed and he continued to spit blood; that the left side of his face was still numb at the time of the trial and that his left eye continued at all times to remain painful and bloodshot; that he had not suffered from colds or from nervousness before the accident, but had so suffered ever since the accident; that at times he could not write his name because of shaking from nervousness; that he was unable to work the entire day even at the time of the trial but was compelled to leave his work and go home. Another doctor testified that the X-rays showed a depressed fracture which probably ran down into the left temporal region of the petrous bone; that the sinus was filled with fluid, probably blood; that the X-rays taken at the time of the trial showed that there was just a beginning of a healing of the fracture; the unconsciousness and continuance of the headaches over a long period of time, indicated a severe concussion of the brain; that plaintiff could not do any great amount of work at the time of the trial and if he attempted working long hours, he would probably have a nervous breakdown; that it was impossible to say how long the nervous condition would continue, but that it might continue indefinitely; that plaintiff should have treatments for the sinus condition and that a radical sinus operation would probably be required.

We need not further refer to the testimony regarding plaintiff's injuries, for it is apparent from what has been said that the evidence showed that said injuries were severe, painful, disabling and lasting. In fixing the award, the jury no doubt accepted as true and gave serious consideration to the testimony regarding the injury to plaintiff's nervous

system. In support of the judgment, we must accord full weight to that testimony and it is a matter of common knowledge that an injury to the nervous system often plays a large part in causing suffering and disability. (*Taylor* v. *Lowenstein*, 113 Cal. App. 665 [298 Pac. 847] ; *Johnson* v. *Pearson*, 100 Cal. App. 503 [280 Pac. 394].) While the special damages alleged and proved were less than $1,000 and while the award for general damages was a substantial one, we cannot say that it was so grossly excessive as to shock the sense of justice or to suggest at first blush passion, prejudice or corruption on the part of the jury. We therefore conclude that the judgment in favor of plaintiff should not be disturbed because of the amount awarded in view of the settled rules governing the action of appellate courts in dealing with the question of damages.

The judgments appealed from are affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 3, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 2, 1935.