[Civ. No. 3659.   Fourth Dist.   July 28, 1947.]

TRUMAN WEST, Respondent, v. W. V. LAURENCE et al., Appellants.

Harry W. Horton for Appellants.

Clarence B. Smith for Respondent.

MARKS, J.—This is an appeal from a judgment in the sum of $10,633.05 for damages sustained by plaintiff as a result of a collision between an automobile which he was driving south on a public highway in Imperial County, and a semi-trailer being driven north on the same road by W. K. Kemp. It was owned by Kemp and W. V. Laurence and was being operated on their business. The accident happened about 9 p. m. on August 9, 1944. The night was clear, but dark, and the roadway was dry. The case was tried before the court without a jury and a motion for new trial was denied.

The collision occurred on the old Brawley-Calipatria Highway which runs north and south and has a paved center 16 feet wide with an 8-foot traversable shoulder on the west side, and another about 6 feet wide on the east side. There is a canal with a substantial west bank on the east side of the road. About 60 feet north of the point of impact is a private road leading into the Stahl Ranch which lies east of the highway and was the destination of defendants' truck. This private road crosses the canal by means of a bridge 14 feet wide. It was stipulated that a vehicle of the length of defendants' truck and semi-trailer could not make the turn into the private road without crossing to the west half of the pavement because of the narrow bridge, although Kemp testified that he could make this turn from the east half of the pavement and that no part of his vehicle was ever west of the center of the highway. The error in this last statement seems to be demonstrated beyond question by the physical facts as well as other evidence and the briefs and arguments of counsel for both parties are based on the assumption that the truck and semi-trailer were straddling the center of the pavement with their west sides west of the center.

Kemp was driving a stake-bodied truck to which was attached a long semi-trailer 84½ inches wide. Plaintiff and his wife were riding in a 1934 model sedan. Both testified there were no clearance lights burning on the semi-trailer; that the only illuminated lights on defendants' vehicle at

the time of the collision were its headlights which were similar in appearance to those of an ordinary truck or automobile so that they had no warning that a semi-trailer was attached to the truck until just before the collision.

Plaintiff turned onto the highway about one mile north of the point of collision and proceeded south on his own right hand side of the pavement at a speed of not more than 20 miles an hour. He was driving with his left hand on the steering wheel, his left arm resting on the left front door. (The window was rolled down.) His elbow was protruding about two inches beyond the body of the car and inside of the line of the running board. After turning onto the highway, he and his wife both saw the headlights of the approaching truck. When about 200 feet from it they observed that the truck was straddling the center of the highway and inclining further to the west. Plaintiff slowed down and turned his car to the west and when about 60 feet from the truck he drove 2 or 3 feet still further to the west. When he had passed the headlights of the truck he saw the semi-trailer for the first time. He cleared the truck without hitting it. The left front wheel of his automobile came into contact with some portion of the left front of the semi-trailer and plaintiff's elbow came into contact with its left front corner, shattering the elbow and seriously and permanently injuring his left arm. The left front tire of the automobile blew out and that wheel was bent. Tire burns and scratches on the pavement started from the point of impact which was between 2 and 3 feet (probably about 2½ feet) east of the west edge of the pavement and bore southeasterly in an arc until the car came to rest on the bank of the canal to the rear of the truck. Drops of blood paralleled the tire burns about 6 inches northeasterly from them. It is evident that the right wheels of the automobile were between 2 and 3 feet west of the west edge of the pavement and that the semi-trailer occupied 4 or 5 feet of the west, its left, half of the pavement at the time of the collision.

Mrs. West described the movements of the vehicles just before the collision as follows:

"Q. And did your husband change the course of your car any by the time you came opposite the Stahl Ranch entrance? A. Yes. Q. What change, if any, did he make? A. Well, by the time we were opposite the entrance to the Stahl Ranch, I would say he had pulled west to the shoul-

der of the road, the wheel of our car was possibly a foot off the pavement. Q. About how far away was the other car from you when you were there, if you know? A. Well possibly forty maybe 50 feet and maybe not that far. Q. Well where was your car travelling on the highway when you were opposite the Stahl Ranch? A. Well, the car, what we thought was a car, was over on the west side, pulled over to the west side of the highway. Q. How much was it on the west side? A. Well, I would say—. Q. With reference to the center of the road where was it travelling? A. Possibly over the center of the road around maybe 3 feet, 2½ to 3 feet at that time. Q. At the time you saw it when you were opposite the entrance to the Stahl Ranch? A. Yes. Q. Did you proceed down south? A. Yes. Q. How far did you go before anything happened? A. Well, I would say we went around maybe 15 to 20 feet and we noticed the truck made a severe turn, turned sharply to the west side of the pavement and at that time my husband pulled our car over to where the right front wheel was at least three feet off the pavement, to 3½ feet off the pavement and the left front wheel maybe 2½ feet on the pavement. Q. About how far was it from the front of your car to the front of that vehicle when your husband pulled over that last time? A. When he made the pull over the last time? Q. Yes. A. Eight or ten feet when we last pulled over. . . . Q. The semi-trailer was a flat bed? A. Yes."

There is evidence in the record contradicting some of the foregoing statements which we will not detail as conflicts in the evidence are settled in the trial court and an appellate court must accept as true the credible evidence supporting the verdict and judgment.

Defendants state their grounds for reversal of the judgment as follows:

"May a plaintiff, who claims to have seen a truck being driven straddling the center line of the highway and who is forewarned of the truck's continued operation in that position, fail to give way and avoid the accident when he has ample room so to do?" In their argument they maintain (1) that Kemp was not guilty of any negligence as it was stipulated that it was necessary for him to drive to his left of the center of the highway in order to make the turn over the bridge into the Stahl Ranch, and (2) that plaintiff was guilty of primary or contributory negligence in not driving further

to his right onto the perfectly traversable shoulder and thus have avoided colliding with the semi-trailer. They cite and rely on many cases which they maintain support these arguments.

They first state, and we believe correctly so, that a driver of a vehicle on a public highway who is himself not negligent and is obeying the law, may rely on the assumption that another driver will obey the law only so long as it is not apparent that he will violate it. From this they argue that when plaintiff and his wife saw Kemp driving his truck over the center of the highway, and continue to do so, plaintiff should have driven further to his right so as to have insured that there would have been no collision. While the premise is correct the deductions from it are entirely erroneous under the facts in evidence.

Defendants cite the case of *Bauhofer* v. *Crawford*, 16 Cal. App. 676 [117 P. 931], in which an automobile ran into a milk wagon parked on its left hand side of the street. A motion for nonsuit was granted and the judgment for defendant was reversed on appeal. That accident happened on February 3, 1909, and the case was decided on July 25, 1911, which dates were both before the adoption of the California Vehicle Act and before the statutes were passed which regulate the parking and operation of vehicles on streets. That case cannot assist defendants in view of the statutes now in effect. (*Shedd* v. *Downie*, 31 Cal.App.2d 104 [87 P.2d 395].)

Defendants also cite *Todd* v. *Orcutt*, 42 Cal.App. 687 [183 P. 963], where an accident happened when the defendant's car was to its left of the center line of the street. All that is held in that case is that it is not always negligence for a driver to operate his vehicle on his left hand side of the street when it may be "impracticable" to drive it on the right half. *Zohner* v. *Sierra Nevada L. & C. Co.*, 114 Cal.App. 85 [299 P. 749], is much to the same effect.

The cases of *Hanson* v. *Cordoza*, 106 Cal.App. 500 [290 P. 62]; *Inouye* v. *Gilboy Co.*, 115 Cal.App. 25 [300 P. 835]; *Huber* v. *Scott*, 122 Cal.App. 334 [10 P.2d 150], and *Spear* v. *Leuenberger*, 44 Cal.App.2d 236 [112 P.2d 43], all involved accidents which happened when the plaintiff drivers were turning from the right half of a street across the left half to enter a private driveway. All of those cases hold that it is not always negligence to make such a turn; that what is

required of a driver making such a turn is that he exercise due care in doing so; that in such cases the questions of negligence and contributory negligence are of fact for the trier of fact and not for an appellate court.

*Hagenah* v. *Bidwell*, 46 Cal.App. 556 [189 P. 799]; *Straten* v. *Spencer*, 52 Cal.App. 98 [197 P. 540]; *Anderson* v. *Dahl*, 121 Cal.App. 198 [8 P.2d 883]; *Lowe* v. *City of San Diego*, 8 Cal.App.2d 440 [47 P.2d 1083]; *Abrams* v. *Hubert*, 10 Cal.App.2d 404 [51 P.2d 884]; *Jolley* v. *Clemens*, 28 Cal. App.2d 55 [82 P.2d 51]; and *Finney* v. *Wierman*, 52 Cal. App.2d 282 [126 P.2d 143], all involved situations where the drivers of automobiles were confronted with sudden peril.

The question of the contributory negligence of plaintiff here must be measured by the facts of this case. The accident happened at night. The semi-trailer was 84½ inches wide and should have displayed the clearance lights required by section 625 of the Vehicle Code. The absence of these lights caused plaintiff to believe he was meeting an ordinary truck or automobile. Had there been clearance lights to warn him he could, and testified he would have driven far enough to his right to clear the semi-trailer. He only had warning of an ordinary vehicle approaching him and did turn far enough to his right to avoid it, but not the semi-trailer. Having no warning of the approach of the semi-trailer it was not negligence as a matter of law for him to fail to get entirely off the pavement to avoid it.

The negligence of Kemp is abundantly established. While it may be assumed that he had the right to go onto his left hand side of the highway to make this turn, he should have chosen a proper time to do so, when the movement would not have endangered another lawfully using the highway, and when it would not have placed the semi-trailer immediately in the path of plaintiff's automobile. The absence of clearance lights was also a major cause of the accident which concurred with Kemp's driving onto his left side of the highway at the wrong time as the proximate cause of the collision. He was not confronted with any sudden emergency to excuse his veering to his left, which he did solely for his own convenience in making the turn into the Stahl Ranch. The headlights on the sedan were lighted so Kemp should have been warned of its approach. While it is not always negligence for a driver to travel on his left side of the highway to make a turn into a private drive, he should

only do so when an ordinarily prudent person would believe the movement could be made in safety. Whether or not the movement could be so made was a question of fact for the trial judge who resolved the question against defendants. That decision is final here as there is a preponderance of the evidence supporting it, and also the conclusion that the sole proximate cause of the accident was the negligence of Kemp in the particulars we have outlined.

The judgment is affirmed.

Barnard, P. J., concurred.