396 P.2d 123

James HAWKINS, Plaintiff-Respondent,
Cross-Appellant,

v.

Melvin CHANDLER, dba Chandler's Wreck-
ing Service, Defendant-Respondent,

and

J. Lew Papes, Defendant-Appellant.

No. 9370.

Supreme Court of Idaho.

Oct. 14, 1964

Rehearing Denied Nov. 10, 1964.

E. L. Miller, Coeur d'Alene, for appellant.

James W. Ingalls and Charles H. Kimball, Coeur d'Alene, for respondent, cross-appellant Hawkins.

Brown, Peacock & Keane, Kellogg, for respondent, Chandler.

TAYLOR, Justice.

On the evening of November 24, 1961, plaintiff Hawkins (respondent and cross-appellant) was driving his automobile north on U.S. Highway 95, traveling from Potlatch toward Tensed. Snow had been plowed off the road so that both lanes were open. The surface was icy and slick. From the summit of what is known as Marsh Hill, the road descends toward the north. At the scene of the accident the grade averaged about 6%. After a slight turn to the left, for north-bound traffic, there were two rather sharp curves to the right; the roadbed sloped toward the inside of these curves; the road was constructed on a sloping hillside; on the right the hill rose up from the borrowpit and on the left it sloped downward from the shoulder of the road; on either side was a growth of pine trees. As he proceeded down the hill, plaintiff observed a car which had slid off the road to the right on rounding the first right-hand curve. In attempting to pass another vehicle farther to the north, plaintiff's car slid off the road just beyond the second right-hand curve. Plaintiff then walked back over the summit of the hill to a farmhouse and called the Chandler's Wrecking Service at Potlatch. This call was placed about 6:00 or 6:30 in the evening, and it was getting dark. On returning toward his car the plaintiff found that another car had slid off the road just ahead of the first car. This second car was driven by the witness Rouse, who, being equipped with chains, had undertaken to help the first car out of the ditch, and his car slid off the road in the process.

When the wrecker arrived it was positioned on the road opposite the Rouse car to pull that car back on the highway. While this operation was in progress, the lights of defendant's (appellant Papes) car were seen coming over the summit. On rounding the curve, Papes, being unable to stop his car, drove it into the back end of the wrecker, which was standing at an angle on the right-hand, or northbound lane of the highway. Plaintiff was caught between defendant's car and the wrecker as he attempted to move off the road between the back of the wrecker and the Rouse car. As a result plaintiff's right leg was severely injured.

Plaintiff charged defendant Papes with negligence in driving at an excessive speed in view of the conditions of the highway; in failing to keep a proper lookout; in failing to observe the wrecker and the lights thereon; in failing to maintain control

of his car and to stop before reaching the wrecker; and in failing to pass the wrecker on the left.

Plaintiff charged defendant Chandler, operator of the wrecker, with negligence in failing to place warning flares or other signals, or to station a flagman, upon the highway to warn drivers of approaching vehicles of the position of the wrecker.

Defendant Papes by affirmative answer and cross claim charged defendant Chandler with negligence in the placing of the wrecker diagonally across his lane of travel and in failing to place flares or a flagman to warn approaching drivers, thus creating "a trap or a snare" by reason of which defendant was unable to avoid the collision, and charged plaintiff Hawkins as the employer of Chandler, to whom Chandler's negligence was imputable. Defendant Papes charged the plaintiff with contributory negligence and alleged his assumption of risk in placing himself in a position of danger between the wrecker and the approaching Papes' vehicle.

The jury returned a verdict in favor of the plaintiff and against the defendant Papes, awarding damages; and also a verdict in favor of defendant Chandler and against the plaintiff, denying plaintiff damages against Chandler; and in favor of Chandler and against defendant Papes on the latter's cross claim.

From the judgments entered against him on these verdicts defendant Papes appealed, and plaintiff Hawkins appealed from the judgment entered against him in favor of defendant Chandler.

The evidence on the issues of negligence, contributory negligence and assumption of risk was conflicting. No issue is presented on this appeal as to sufficiency of evidence.

■■ Appellant Papes assigns as error the ruling of the court permitting the witness Frost, a highway patrolman of ten years experience, to testify to the effect that the law did not require the use of flares by the driver of a wrecker, unless the wrecker was disabled. The testimony was admitted over objection that it called for the opinion of the witness on a question of law. A lay witness is never permitted to give his opinion on a question of law. 20 Am.Jur., Evidence, § 799; 32 C.J.S. Evidence § 453. The testimony was not admissible. However, under circumstances disclosed by the record, its admission was not reversible error. On direct examination by plaintiff's counsel, the witness was questioned concerning a conversation he had had with Chandler a few days after the collision, as follows:

"Q Did he make any statement with reference to the necessity for use of flares on that particular occasion?

"A Well, he indicated that he normally would use those, take those necessary precautions.

"Q Did he state why he had not on this evening in question?

"A At that time he indicated he didn't really know why he didn't take any necessary precautions. I don't recall of any other reason being indicated."

By this examination the witness was led to suggest to the jury that the use of flares was a necessary legal requirement. The cross-examination tended to offset that impression. Moreover, the court, having in mind the cross-examination, permitted the officer to testify that it was the custom of operators of wreckers in the area to use flares or flagmen, under such circumstances.

Appellant Papes assigns as error the admission in evidence of defendant Chandler's exhibit D. This was a map or scale drawing of a section of the highway, prepared by an engineer employed by defendant Chandler. The section of highway represented was based upon the location of the point of collision as pointed out to the engineer by Chandler. The exhibit purports to portray the point of impact and 600 to 700 feet of the roadway and curve upgrade to the south. It also purports to show the dip of the roadbed toward the inside of the curve at the point of collision; the degree of the curve; the average slope of the grade; the distance from the point of impact to the farthest point upgrade on the inside edge of the road at 4½ feet elevation from the roadbed, that

the surveyor's stadia rod could be seen through the engineer's transit, set at the inside edge of the road; and a like maximum distance along the center line of the highway. Papes' objections to the exhibit were, first, that the starting point from which the survey was made was not located with sufficient definiteness to entitle the exhibit to be admitted, and, second, that the conditions existing at the scene at the time of the survey were not the same as at the time of the accident. Mr. Chandler was extensively examined and cross-examined with reference to the point of impact, which he pointed out to the engineer, and was positive that he had accurately indicated that point. The engineer was extensively cross-examined as to the conditions existing at the time he made the survey from which the exhibit was prepared. He testified that the survey was made between 11:00 a. m. and 3:00 p. m. on the 4th day of May, 1963; that the road was bare; that it was a clear day, although cloudy; that the transit afforded magnification and better vision at a distance than would be available to the naked eye; that a moving driver would not have as clear or accurate a view as he had through the transit; and that the accuracy of the exhibit as to physical features and distances shown would depend on the accuracy of Chandler in locating the point of impact.

From the testimony of these witnesses, the jurors were made aware of the probability and nature of such inaccuracies

as might be contained in the exhibit. They were thus enabled to appraise it, and limit its application to the value it did have in helping them understand in general the scene and surroundings of the collision. The sight distances represented only those distances on a straight line between the transit and the stadia rod at which the hillside or vegetation adjacent to the inside of the curve would cut off the vision of an observer from either point to the other. The engineer's explanation that a driver would not be able to make observations as accurate as afforded by the use of the transit, would prevent the jury being misled by these distances. The admission of the exhibit was not error.

Papes also objected to the remark made by the court at the time Chandler's exhibit D was admitted, to wit: "At least we have some distances here." The remark expressed to the jury an awareness of possible weaknesses in the exhibit. In view of this and the engineer's cross-examination we do not think defendant Papes was prejudiced. McShane v. Quillin, 47 Idaho 542, 552, 277 P. 554 (1929); McKissick v. Oregon Short Line Ry. Co., 13 Idaho 195, 89 P. 629 (1907).

On cross-examination of Papes the court overruled his objection to the question as to whether he was driving at such speed and in such manner, that, on seeing the obstruction, he could stop his car before colliding with it. Papes complains that the question assumes it was his absolute duty to so drive under all conditions. The applicable rule was stated in Stanger v. Hunter, 49 Idaho 723, 732, 291 P. 1060, 1063 (1930):

> "one driving in the nighttime must proceed at such rate of speed that he may be able ordinarily to stop short of an object appearing in the radius of his lights, and that he must see any object in his path which an ordinarily prudent driver under like circumstances would have seen."

O'Connor v. Black, 80 Idaho 96, 326 P.2d 376 (1958); Pittman v. Sather, 68 Idaho 29, 188 P.2d 600 (1947); Baldwin v. Mittry, 61 Idaho 427, 102 P.2d 643 (1940). Any improper inference the jury may have gathered from the ruling was dispelled by instruction number 35 given by the court:

> "You are instructed that the driver or operator of a motor vehicle is not required to be able to stop absolutely short of an object appearing in the radius of his headlights, regardless of existing conditions. The law only requires that he drive at night at such a speed as to be able ordinarily to stop."

After the jurors had deliberated some hours they returned to the courtroom and at their request a portion of the testimony of the witness Rouse as to the distance from which he first observed the car in the ditch, was read to them. Complaint is made that elsewhere in testimony,

not read, he had testified that distances given by him were based on guess and estimate. In the portion read he was asked for his estimate and qualified his answer, "The distance is hard to tell." Thus, if the effect was to re-emphasize his testimony as to distance, it was likewise re-emphasized that his answer was an estimate.

Likewise, a portion of the testimony on redirect examination of the witness Frost, was read to the jurors. In the portion read, Frost had testified that it was the custom of wrecker operators in that area to place flares or use flagmen to warn traffic of hazards on the highway, at night. Reading of this testimony did not prejudice Papes because it was favorable to him.

The court instructed the jury as to the duty of the operator of a motor truck to carry reflectors or other signaling devices of the type, and at the times, required by I.C. § 49–841(a). However, the court refused to give defendant Papes' and plaintiff Hawkins' requested instructions to the effect that it was the duty of defendant Chandler to place the flares or other signaling devices in the manner as required by I.C. § 49–842, at the time he stopped his wrecker on the highway. Subdivision (a) of that section imposes the duty of placing warning devices as follows:

"Whenever any motor truck, passenger bus, truck tractor, trailer, semi-trailer, or pole trailer is disabled upon the traveled portion of any highway or the shoulder thereof outside of any municipality at any time when lighted lamps are required on vehicles the driver of such vehicle shall display the following warning devices upon the highway during the time the vehicle is so disabled on the highway except as provided in paragraph (b): * * *."

The section then details the type and manner of placing such warning devices.

By its instructions, the court ruled that the wrecker was not "disabled" within the meaning of the statute and that Chandler was, therefore, not required to comply therewith. Defendant Papes and plaintiff Hawkins assign as error such instructions and the refusal of the court to instruct that the wrecker was disabled within the meaning of the statute, and that Chandler was, therefore, required to comply.

Prior to 1953, the statutory requirements for the placing of flares or other signals was contained in I.C. § 49–549, as follows:

"Whenever any motor truck shall stop upon a highway during the period of time when lighted lamps must be displayed on motor vehicles, where such truck is not or can not be stopped or parked off the paved, oiled or main travelled portion of the highway, *whether disabled or not*, the driver or other person in charge of such vehicle

shall place or cause to be placed, such flares, lanterns or other lighted signals to be lighted and placed upon the highway, * * *." (Emphasis added.)

This section was repealed in 1953 when the present § 49–842, supra, was enacted. Thus, the legislature, by the change, limited the requirement of placing signaling devices upon the highway to the operator of trucks, which were disabled, and relieved operators of trucks, which were not disabled, from that requirement. The legislative purpose in requiring the operator of a wrecker truck to carry flares, but not requiring him to use them unless the wrecker is disabled, is not apparent. However, the courts cannot inquire into the motive or purpose of the legislature, when its language is unambiguous. When the language of a statute is changed, it is presumed a change in application or meaning was intended. Wellard v. Marcum, 82 Idaho 232, 351 P.2d 482 (1960); Pigg v. Brockman, 79 Idaho 233, 314 P.2d 609 (1957); State ex rel. Anderson v. Rayner, 60 Idaho 706, 96 P.2d 244 (1939). We, therefore, hold that the court correctly submitted to the jury the issue as to whether Chandler was negligent in failing to place flares or other authorized signaling devices upon the highway prior to the accident.

Idaho Code § 49–820(d) provides as follows:

"Any vehicle. may be equipped with lamps which may be used for the purpose of warning the operators of other vehicles of the presence of a vehicular traffic hazard requiring the exercise of unusual care in approaching, overtaking or passing, and when so equipped may display such warning in addition to any other warning signals required by this act. The lamps used to display such warning to the front shall be mounted at the same level and as widely spaced laterally as practicable, and shall display simultaneously flashing white or amber lights, or any shade or color between white and amber. The lamps used to display such warning to the rear shall be mounted at the same level and as widely spaced laterally as practicable, and shall show simultaneously flashing amber or red lights, or any shade of color between amber and red. These warning lights shall be visible from a distance of not less than 500 feet under normal atmospheric conditions at night."

The court instructed the jury that if Chandler's wrecker was equipped with, and displayed to the rear, lights authorized by the foregoing provision, then it was equipped as required by law. There was evidence that the wrecker was equipped with seven blinking red lights facing to the rear and that they were lighted and in

operation from the time the wrecker stopped on the highway until the collision. The wrecker was positioned at an angle across the right-hand lane of travel. Some of the witnesses positioned the wrecker at a slight angle and others at a considerable angle to the highway. Chandler testified that some of the red blinkers could be turned almost to a right angle with the truck, but whether they were at the time so turned as to cast their light up the highway to the south was not shown. However, there was evidence that the blinkers were visible to the first right-hand curve, a distance variously fixed by the witnesses, at 200 to 600 feet.

Defendant Papes and plaintiff Hawkins assign as error the refusal of the court to give an instruction requested by them to the effect that Chandler violated the provisions of I.C. § 49–755 by stopping his wrecker upon the traveled part of the highway. That section makes it unlawful to so park any vehicle when it is "practical to stop, park, or so leave such vehicle off such part of said highway" and provides that a sufficient width shall be left for the free passage of other vehicles and a clear view of the vehicle from a distance of 200 feet in either direction shall be available, and further provides that the section shall not apply to a disabled vehicle. That statute does not apply to the operator of a wrecker while engaged in the necessary emergency operation of moving a disabled vehicle. Anno. 30 A.L.R.2d 1019, 1099, et seq. (1953). The court properly instructed the jury that Chandler was making proper use of the highway and that he was not liable unless the jury found he was negligent in the manner in which he was performing that operation.

Defendant Papes assigned as error the giving of instruction number 30, as follows:

"You are instructed that if the wrecker driver, Chandler, was exercising ordinary care, he had a right to assume that every other person using the highway would be driving at a reasonable and prudent speed and so controlled as necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

"The wrecker driver, Chandler, had a right to rely and act on that assumption and cannot be found negligent for failing to anticipate an accident which could be occasioned only by a violation of law or duty by another."

The instruction is erroneous in two particulars:

The second paragraph would relieve the operator of the wrecker from the duty to anticipate an accident which could be occasioned without violation of law or duty by another. Where a wrecker, at night, is hidden from the view of an ap-

proaching driver by a nearby curve, on a downgrade, covered with ice and snow, in a slippery condition, a jury might find that the operator of the wrecker should anticipate that an ordinarily prudent driver, exercising ordinary care and driving at a reasonable speed, would be unable to avoid colliding with the wrecker, upon discovering its position after rounding the curve. Cf. Dewey v. Keller, 86 Idaho 506, 517, 388 P.2d 988, 994, 995 (1964).

■ The first paragraph of instruction 30 would require a driver on the highway to drive at such speed and have such control of his vehicle as to be able to avoid colliding with any person or vehicle lawfully using the highway, under any and all circumstances. That portion of the instruction, though in part based upon statute— I.C. § 49–701(a)—, is in conflict with the rule adopted by this court which is correctly set out in instruction 35, supra. The instruction should have been modified accordingly. See: O'Connor v. Black, 80 Idaho 96, 326 P.2d 376 (1958); Pittman v. Sather, 68 Idaho 29, 188 P.2d 600 (1947); Maier v. Minidoka County Motor Co., 61 Idaho 642, 105 P.2d 1076 (1940); Stanger v. Hunter, 49 Idaho 723, 291 P. 1060 (1930); Dewey v. Keller, supra.

■ Instruction 34, also assigned as error, was as follows:

"You are instructed that it is the law of the State that when a person is operating a motor vehicle upon the public highway at night time he must proceed at such a rate of speed that he may be able *to* ordinarily to stop short of an object appearing in the radius of his lights. Generally it is negligence as a matter of law, or at least strong evidence of negligence, for a motorist to operate a motor vehicle on a highway at such a speed that the vehicle cannot be stopped within the distance within which objects can be seen ahead of the vehicle."

The second sentence in this instruction contains a comment on the evidence, and is incorrect and in conflict with instruction 35, since it is not negligence *as a matter of law* to drive a motor vehicle at night at such a speed that it may not be stopped short of objects appearing in the radius of its lights.

The errors in instruction 30 were prejudicial to plaintiff Hawkins in that the instruction tended to shield Chandler against Hawkins' charge of negligence on the part of Chandler. The errors in instructions 30 and 34 were prejudicial to defendant Papes in that the instructions tended to shield defendant Chandler against Papes' charge of negligence on the part of Chandler as the sole proximate cause of the collision. Instructions 30 and 34 were also prejudicial to defendant Papes in that they tended to shield plaintiff Hawkins against Papes'

charge of contributory negligence on the part of Hawkins.

We have examined the other assignments of error and find them to be without merit.

The judgments are reversed and the cause is remanded for a new trial.

Costs to appellants.

McQUADE, McFADDEN and SMITH, JJ., concur.

TOWLES, District Judge (dissenting):

The majority opinion directs a reversal of the judgment of the trial court on the alleged errors contained in instructions numbered 30 and 34.

Instruction No. 30, which is quoted in the majority opinion, correctly states the law. In line 2 of the instruction the jury is advised that if the wrecker driver, Chandler, was exercising ordinary care, then and only then he might assume that every other person would also be exercising ordinary care. The argument contained in the majority opinion to the effect that a jury might find that the operator of the wrecker should anticipate that a person exercising ordinary care would be unable to avoid colliding with the wrecker, does not seem to conform to the law as contained in the instruction.

In the absence of any circumstances imposing such a duty, the operator of a motor vehicle is not bound to anticipate negligence or unlawful conduct on the part of other persons or motorists in their use of the highway. On the contrary, provided there are no circumstances which should reasonably put him on notice to the contrary, a motorist has the right, to some extent at least, to assume and to act on the assumption that other users of the highway will obey the law, will comply with statutory requirements and will, in general, exercise due or at least reasonable and ordinary care. A motorist's right to assume due care and observance of the law by other users of the highway, is qualified by his duty to exercise due care himself, or such care as is commensurate with the dangers to be reasonably anticipated. The right of motor vehicle operators to rely on the care of others is restricted to operators who themselves are exercising reasonable care. West v. Laurence, 81 Cal. App.2d 89, 183 P.2d 31 (1947); Nicholson v. Nelson, 27 Wash.2d 472, 178 P.2d 739 (1947); Kindscher v. Dyer, 78 Cal.App.2d 323, 177 P.2d 782 (1947); Jones v. McCullough, 148 Kan. 561, 83 P.2d 669 (1938); Lovett v. Gill, 142 Or. 534, 20 P.2d 1070 (1933); Hickerson v. Jossey, 131 Or. 612, 282 P. 768, 283 P. 1119 (1929); 60 C.J.S. Motor Vehicles § 249.

A user of the highway is not guilty of contributory negligence in assuming, in the absence of knowledge or notice to the con-

**34**

trary, that others using it in common with him will comply with the law and use ordinary care to avoid injuring him; but he cannot, for that reason, omit any of the care which the law otherwise demands of him. Beck v. Sirota, 42 Cal.App.2d 551, 109 P.2d 419 (1941); McCulloch v. Horton, 105 Mont. 531, 74 P.2d 1, 114 A.L.R. 823 (1937); 61 C.J.S. Motor Vehicles § 459.

Certainly, taking the two paragraphs of the instruction together, the jury could not have understood that the wrecker driver, Chandler, was excused from exercising ordinary care as, of course, if he failed to exercise ordinary care, he would be guilty of negligence. It is not felt that this instruction was in any way prejudicial to any of the parties. The majority opinion contends that instruction No. 30 was prejudicial to the plaintiff, Hawkins, when in reality the Hawkins appeal was only to be considered by the court in the event of a reversal of the judgment by Hawkins against the defendant Papes. This writer cannot conceive how the instruction could be prejudicial to the defendant Papes when it correctly states the law as set forth heretofore.

If the instruction tended to favor the defendant Chandler, the wrecker driver, who was excused from liability by the jury, then the rule announced by the Supreme Court of California in the case of Johnston v. Peairs, 117 Cal.App. 208, 3 P.2d 617, 618 (1931), would apply as follows:

"As is not unusual in such cases, the principal dispute seems to have been between the respective defendants, each of whom endeavored to place the blame upon the other. * * * 'It is clear that the liability of appellant * * depended entirely upon the answer to the questions whether he himself was or was not negligent, and whether or not such negligence, if it existed, proximately caused or contributed to the injuries complained of. These questions are wholly independent of the question as to whether or not his codefendant * * * was also liable.' "

Error as between joint tortfeasors should not be considered by the court to the prejudice of the position of the respondent.

"if one joint tortfeasor was negligent, such negligence was, as a matter of law, at least a concurrent cause of the plaintiff's injury, and even if a codefendant is exonerated, the defendant is not prejudiced, there being ordinarily no right of contribution between joint tortfeasors. * * * a plaintiff's right of action against joint tortfeasors is joint and several and thus he may sue all or any one of them, so that where the complaining defendant's liability to the plaintiff is established, his rights

between himself and the plaintiff are not affected by errors committed in favor of a codefendant, and if the codefendant is exonerated the complaining defendant's position is no worse than it would have been had a joint judgment been rendered, for the plaintiff could have proceeded against such defendant alone for satisfaction of a joint judgment, and, there ordinarily being no right of contribution between joint tortfeasors, the defendant could not have looked to the codefendant for payment of any part of the judgment. * * * Except for Alabama * * * all jurisdictions in which the question has arisen subscribe to the view that a defendant cannot, on appeal or writ of error, complain of an instruction favoring a codefendant which merely had the effect of preventing a joint judgment." Annotation, 60 A.L.R.2d 526, 527, 528.

Gensler-Lee of Reno v. Geertson, 73 Nev. 328, 318 P.2d 1113 (1957); Hession v. City and County of San Francisco, 122 Cal.App.2d 592, 265 P.2d 542 (1954); Peters v. City and County of San Francisco, 41 Cal.2d 419, 260 P.2d 55 (1953); Mountain States T. & T. Co. v. Consolidated Freightways, 121 Utah 379, 242 P.2d 563 (1952); Laubscher v. Blake, 7 Cal.App.2d 376, 46 P.2d 836 (1935); Brunetto v. Spediacci, 124 Cal.App. 252, 12 P.2d 151 (1932);

Johnston v. Peairs, 117 Cal.App. 208, 3 P.2d 617 (1931); Harju v. Market Street Ry. Co., 114 Cal.App. 138, 299 P. 788 (1931); Crabbe v. Rhoades, 101 Cal.App. 503, 282 P. 10 (1929).

In regard to the claimed error in instruction No. 34, it should be pointed out that the Idaho Supreme Court, in three previous cases, has affirmed the language used in this instruction word for word.

Quoting from the recent case of O'Connor v. Black, 80 Idaho 96, 326 P.2d 376 (1958) Justice Smith used the following language:

"This Court in Maier v. Minidoka County Motor Co., 61 Idaho 642, 650, 105 P.2d 1076, 1079, stated the rule to be:

" 'Generally it is negligence as a matter of law, or at least strong evidence of negligence, for a motorist to operate his automobile on a highway at such a speed that the automobile cannot be stopped within the distance within which objects can be seen ahead of the automobile. Goodman v. Wisby, 152 Kan. 341, 103 P.2d 804. This court has placed its approval upon the doctrine that one driving at nighttime must proceed at such rate of speed that he may be able *ordinarily* to stop short of an

object appearing in the radius of his lights.' (Emphasis supplied).

"And in Pittman v. Sather, 68 Idaho 29, 34, 188 P.2d 600, 603, this Court stated:

> "'The rule laid down in the Maier case, supra, does not require that one be able absolutely to stop short of an object appearing in the radius of his lights, regardless of existing conditions, but only that he drive at night at such a speed as to be able *ordinarily* to so stop. Whether respondents were or were not negligent in driving at such a speed as not to be able to stop before the collision, was a question for the jury to determine under all the evidence.'

"See, also, Stanger v. Hunter, 49 Idaho 723, 291 P. 1060; Baldwin v. Mittry, 61 Idaho 427, 102 P.2d 643."

Instruction 34 is a correct statement of the law as previously announced by this court, although this writer is willing to concede that the phrase used in the instruction, *as a matter of law,* is questionable. It would seem to me to be the better practice, following the rule of stare decisis, for this court to affirm the decision of the trial court, inasmuch as this was the law at the time this case was tried, but to disapprove the further use of this phrase in the context used in instruction 34.

Both of these instructions considered together with instruction No. 35, clearly stated the applicable law to the jury and the judgment of the trial court should have been affirmed.

In all other respects I concur with the majority opinion.